## ASPLUND CONSTRUCTION CO. et al. v. STATE INDUSTRIAL COMMISSION et al.

No. 28311.    April 25, 1939.
Rehearing Denied May 23, 1939.

Edgar Fenton and Jarman, Brown, Looney & Watts, for petitioners.

D. D. Stull, J. H. Ament, and Mac Q. Williamson, Atty. Gen., for respondents.

RILEY, J. On November 5, 1937, the State Industrial Commission promulgated an order in claim No. B-153, entitled, Theodore J. Hamm v. Asplund Const. Co. and Standard Insurance Co., the pertinent portion thereof being:

"It is therefore ordered, that the respondent or insurance carrier pay the claimant herein, the sum of $426.12, less any sums heretofore paid, being temporary total compensation from the 27th day of July, 1936, less the five day waiting period, to the 20th day of July, 1937, forty-six weeks and one day at the rate of $9.23, per week, and respondent and insurance carrier pay all reasonable, necessary, and authorized medical bills and expenses, the extent of claimant's permanent partial disability, if any, to be hereafter determined."

This is an original action by petitioners, Asplund Construction Company and Standard Accident Insurance Company, to vacate the award.

The petitioners' assignments of error are presented under two propositions, the first being:

"An award for permanent and total disability is the maximum that may be awarded under the Workmen's Compensation Law."

This raises a question of first impression in this jurisdiction (if not in the United States). As applied to the instant case, the question is, Can a claimant, who on June 30, 1920, received a fractured vertebra, for which he was adjudged entitled to and was paid 500 weeks' compensation for permanent and total disability, thereafter receive an award for temporary total disability for a second injury to the same region received while working for a second employer?

On June 4, 1927, the State Industrial Commission, in claim No. 18822, entitled Theodore J. Hamm v. Burbank & Jackson, entered an order wherein it was held that claimant on June 30, 1920, had sustained an accidental injury totally and permanently disabling him from the performance of manual or mechanical labor; that claimant was entitled to compensation for 500 weeks at the rate of $11.54 per week; that claimant had been paid $5,200; and that he was entitled to additional payments in the sum of $570, which was commuted to a lump sum and paid to claimant.

On July 27, 1936, claimant was injured in the same region in which he was injured June 30, 1920. The last injury was suffered while operating a slip drawn by a team of mules. The slip struck a clod and threw claimant, wrenching his back.

Claimant testified that over a period of approximately eight years immediately preceding July 27, 1936, he had worked at various mechanical and manual labor jobs, including three years at an elevator, where he unloaded feed, cars of grain, handled sacks of feed, shoveled coal, and took care of the elevator generally; eight months for the Champlin Refining Company doing steel construction work, during which time he used an air hammer to drive rivets; two months in 1935 for a second elevator, where he was constructing bins; and for sometime prior to commencement of work for petitioner, claimant had been doing construction work at a state institution.

Petitioners take the position that "* * * so long as the first award is not modified, and that adjudication of total and permanent disability stands, it precludes any other or later awards for the reason that total and permanent disability is the ultimate in disability."

In support of their contention they cite Linville v. State Compensation Commissioner (W. Va.) 165 S. E. 803, wherein the claimant, in 1920, received a crushed ankle for which he received the maximum provided by statute for the loss of a foot. The ankle responded to treatment and ten years later a second injury was received, for which claimant was allowed temporary compensation, but was refused an award for permanent disability. On appeal the commission was sustained.

It must be borne in mind that the order of the Industrial Commission in the instant case provided compensation for temporary total disability from July 27, 1936, less 5-day waiting period, to July 20, 1937, and expressly reserved for future determination the extent, if any, of claimant's partial permanent disability.

The relief sought in this case, viz., an award for temporary total disability, was actually granted in the Linville Case and only the question of permanent total disability was involved in the decision therein. It further should be borne in mind that only the injury to a member and the loss of use thereof was involved in the Linville Case, whereas here the question of total permanent disability was involved in the first injury. Furthermore, where a person is adjudged totally and permanently disabled under the West Virginia Compensation Law, he is entitled to compensation at the rate of 2/3 of his average weekly wage for the remainder of his life. Official Code of West Virginia, 1931, 23-4-6. The case cannot be considered as precedent in this jurisdiction on the issue involved.

The only other case cited by petitioners is Federal Mining & Smelting Co. et al. v. Warman et al., 145 Okla. 281, 292 P. 865. The question there involved was the erroneous allowance of an award for disfigurement in addition to an award for permanent and total disability, and is not authority for the petitioners' contention herein.

Claimant's citations are scarcely more helpful, but independent research convinces us that the paucity of authority in the briefs of both parties is due to the fact that the question is one of first impression. We therefore base our conclusion upon an analysis of our own Workmen's Compensation Law in the light of constructions we have previously placed thereon.

The theory and nature of our Workmen's Compensation Law was stated in Brooks v. A. A. Davis & Co., 124 Okla. 140, 254 P. 66, as follows:

"* * *The right of action vouchsafed the injured employee under the common law is abolished, and a theory of compensation has been worked out and enacted to take the place of the common law action. The purpose of the Workmen's Compensation Law is to make the industry prosecuted, if hazardous, bear the burden of human wreckage incident to its operation. * * *

"Much of the work in the operation of any industry must be carried on by human agencies which become a part and parcel of the machinery and without which the industry could not be prosecuted. Accidents have always happened by which such human agencies have been injured, sometimes utterly wrecked and destroyed, just as inanimate parts of the general machinery may be injured, wrecked or destroyed. The injured part must be repaired, the part rendered useless must be laid out and another supplied. Always somebody has been compelled to bear the burden of such repairs and replacements. During all the industrial ages, expenses for repairs and replacements of inanimate parts of the general machinery have been passed on to the ultimate consumer or the industry must cease to function. Before the advent of the Workmen's Compensation Law the workman himself carried the burden of his own injury and wreckage, or was thrown upon society as an object of charity, except in such cases as the workman was able to establish that his injury was the result of negligence of his superior. * * *

"The whole spirit of the law is to require every industry and its patrons to assist in a reasonable manner to salvage the wreck-

age of its animate units of the machinery that prosecutes the industry, and this spirit should prevail in matters arising before the State Industrial Commission in settling questions of compensation; and also when such questions are presented to this court for review."

In Wick v. Gunn, 66 Okla. 316, 169 P. 1087, this court said:

"The Workmen's Compensation Act of this state must be construed as a whole and all presumptions indulged in will be in favor of those for whose protection the statutory compensation was fixed and who by the terms of the act are deprived of the ordinary remedies open to others whose rights are invaded." See, also, McConnell v. Murphy Bros. et al., 45 Wyo. 289, 18 P.2d 629, 88 A. L. R. 376.

In Chandler v. Indus. Comm. of Utah, 184 P. 1020, the court said:

"The beneficent purposes of such acts are therefore apparent to all, and for that reason, if for no other, should receive a very liberal construction in favor of the injured employee. We are all united upon the proposition that in view of the purposes of such acts, in case there is any doubt respecting the right to compensation, such doubt should be resolved in favor of the employee, or of his dependents as the case may be."

Section 13356, O. S. 1931, provides a schedule of compensation. Subsection 1 thereof reads:

"Permanent Total Disability: In case of total disability adjudged to be permanent, sixty-six and two-thirds per centum of the average weekly wages shall be paid to the employee during the continuance of such total disability not exceeding five hundred weeks; loss of both hands, or both feet, or both legs, or both eyes, or any two thereof, shall, in the absence of conclusive proof to the contrary, constitute permanent total disability. In all other cases, permanent total disability shall be determined in accordance with the facts."

Subsection 6 of the same act provides:

"Previous Disability: The fact that an employee has suffered previous disability, or received compensation therefor, shall not preclude him from compensation for a later injury; but in determining compensation for the later injury his average weekly wages shall be such sum as will reasonably represent his earning capacity at the time of the later injury."

It will be noted that the above subdivisions, referring to "Permanent Total Disability" and to "Previous Disability," respectively, are both portions of section 13356, O. S. 1931. Subdivision 6 makes no distinction in its application between the degrees of disability provided in the preceding subdivisions. In the light of the above-cited cases the limitation contended for by petitioners should not be read into the statute.

Although the facts involved were different, the case of Constantin Refining Co. v. Crockett, 87 Okla. 24, 208 P. 788, construes subdivision 6, section 13356. The claimant had suffered a previous temporary disability for which he was awarded compensation for 300 weeks at $10 per week, and was paid in a lump sum. Claimant continued working for the same employer and before the termination of the 300-week period for which compensation had been awarded the claimant received a second injury, for which he was awarded $17.50 per week for temporary total disability.

The employer contended that the $10 payment awarded for the first injury should be deducted from the weekly payments awarded for the second injury, during the period the claimant would be receiving compensation for the first injury had the award not been commuted to a lump sum settlement. Otherwise, the employer contended, he would be paying $27.50 per week contrary to subdivision 5, section 13356, which reads as follows:

"Limitation: The compensation payments under the provisions of this Act shall not exceed the sum of Eighteen ($18.00) Dollars per week, or be less than Eight ($8.00) Dollars, per week. * * *"

In holding that claimant was entitled to $17.50 per week without deducting $10 per week therefrom, this court said:

'We think the foregoing provision is plain, unambiguous, and means what it says. * * *"

"We think it must be conceded that if the personnel of the employer had changed, prior to the time the employee received the subsequent injury, it could not be insisted that the employer, against whom compensation was awarded to the employee, would be entitled to be credited on the award for the amount paid by the other employer for the previous injury; and if this be true, and the statute makes no exception in favor of the employer who at the time of the subsequent injury remains the same, then it seems clear to us that no exception exists, the law makes none, and the commission was without authority to read such exception into the law."

As stated above, subdivision 6 makes no exception in its application to subdivision 1, "Permanent Total Disability," and the commission has no authority to read such exception into the law.

In reaching this conclusion we take into consideration that the adjudication of permanent and total disability by the Industrial Commission was and of necessity must have been based upon opinion evidence by doctors. Assuming, as we must, that this evidence was conscientiously given by the doctors who testified, and so considered in like manner by the commission, we cannot overlook the recuperative powers of nature which in the case of the first injury constituted the final arbiter. There is abundant evidence showing that claimant had recovered and returned to the field of industrial activity for a period of almost eight years. Before beginning his work with Champlin Refining Company he was examined by Dr. Champlin and pronounced fit to perform his contemplated duties. That he was able to obtain work and perform it during a time of widespread unemployment indicates he was able to discharge his duties. In short he had an earning power, irrespective of the prior adjudication of total and permanent disability. Industry saw fit to use this earning power. The purpose of the Workmen's Compensation Act is not indemnity for any physical ailment, but for loss of earning power. Van Orman et al. v. Robinson et al., 150 Okla. 156, 300 P. 412. The commission's second award to claimant was not erroneous because of the first award for permanent total disability.

Petitioners' second proposition is that the commission's findings of fact that claimant sustained temporary total disability as a result of an accidental injury occurring on July 27, 1936, and continuing to July 20, 1937, is not supported by any competent evidence.

We have examined the record and are of the opinion, and hold, that the cause of the injury and the extent thereof is a question of fact to be determined by the State Industrial Commission, and that there is competent evidence to sustain its finding. Fain Drilling Co. v. Deatherage, 179 Okla. 409, 65 P.2d 1212; Loffland Bros. v. Morgan, 153 Okla. 295, 5 P.2d 1067; New York Indemnity Co. v. Miller, 163 Okla. 283, 22 P.2d 107. In the case last cited this court held that whether the disability results from the first injury or the second injury was dependent upon whether the disability was caused by a recurrence of the original injury or by an independent intervening cause. If the finding of the State Industrial Commission is sustained by competent evidence, it will not be disturbed. In the Loffland Bros. v. Morgan

Case, supra, the court holds that an injury which lights up or brings into effect a prior condition latent in the system of the employee is a compensable injury where a disability results.

Award affirmed.

BAYLESS, C. J., and OSBORN, CORN, HURST, and DAVISON, JJ., concur. WELCH, V. C. J., and DANNER, J., absent. GIBSON, J., dissents.