DOUGLAS AIRCRAFT CO., Inc., et al. v. BOUNDS et al.

No. 32229. Dec. 17, 1946.

*175 P. 2d 342.*

Bulla & May and Homer Thompson, both of Oklahoma City, for petitioners.

Randell S. Cobb, Atty. Gen., and John R. Miller, of Oklahoma City, for re-

spondent Royce L. Bounds and State Industrial Commission.

Mont R. Powell, L. B. Moore, and T. D. Lyons, all of Oklahoma City, for respondent Special Indemnity Fund.

OSBORN, J. This is an original proceeding by Douglas Aircraft Company and Fidelity & Casualty Company of New York to review an award made by the State Industrial Commission to Royce L. Bounds, claimant, for an injury sustained by Bounds while in the employ of the Aircraft Company. Claimant Bounds has not cross-appealed. From the evidence it appears that Bounds was, on December 18, 1942, employed in the purchase parts storage department of the Douglas Plant at Oklahoma City, handling parts for airplanes, and that on August 10, 1944, while lifting a box of glass to place it upon a stack, he injured his back. He was taken to a hospital, where he remained for eight days, and then to his home, where he remained until October 2, 1944, when he returned to work in the same department in a supervisory capacity. It further appears that on January 5, 1940, while employed by Prichard Oil Company, he received a back injury, for which he filed a claim for compensation and thereafter settled by joint petition, approved by the State Industrial Commission. Both injuries affected the fifth lumbar vertebra, which, according to medical evidence introduced at the hearing on joint settlement petition, in 1940, and at the hearing on the injury received at the Douglas Plant, had slipped forward until it was badly displaced, so that it barely rested on the edge of the arterior portion of the sacrum. Physicians testifying with reference to this condition described it as a fourth degree spondylolisthesis of the fifth lumbar vertebra.

From the record it appears that the Douglas Company paid compensation to claimant for temporary total disability up to the time he returned to work at their plant, and that the only question involved in this proceeding is the question of permanent disability resulting to claimant from the injury of August 10, 1944.

The Special Indemnity Fund was made a party to the proceeding and filed its answer denying that claimant was an impaired person within the terms of the Special Indemnity Fund Law. The trial commissioner made an award finding that claimant was not a physically impaired person within the Special Indemnity Fund Law, and dismissed the proceeding as to the Special Indemnity Fund; found that claimant as a result of the injury of August 10, 1944, had sustained 33 1/3 per cent permanent partial disability over and above any and all pre-existing disability that claimant may have had at the time he sustained the injury of August 10, 1944, and awarded compensation for 166 2/3 weeks at the rate of $18 per week, amounting to $3,000. The award was affirmed on appeal by the commission en banc.

Douglas makes several contentions, but we consider one decisive, that is, that where the medical evidence adduced before the commission shows that claimant was totally and permanently disabled in 1940, and has been so disabled since that time, the commission could not award compensation for further permanent disability resulting from the injury sustained by claimant on August 10, 1944, and that the award made is not sustained by any competent evidence. This necessitates a brief review of the evidence. The injury being of such character as to require skilled and professional men to determine the cause and extent thereof, the validity of the award necessarily depends on the medical testimony before the commission. Claude Drilling Co. v. Horner, 186 Okla. 61, 96 P. 2d 1027; Shephard v. Crumby, 146 Okla. 118, 293 P. 1049.

The Douglas Company produced before the commission reports of two physicians who had examined claimant. Both testified that the disability suffered by claimant as the result of the injury of August 10, 1944, was tempor-

ary, and that in time he **would fully recover** from the effects of such injury. One of them testified further that because of the congenital weakness of claimant's back he would always be disabled. Claimant produced one witness, Dr. Phil E. White, who had also examined claimant after he received the injury of January 5, 1940. This witness testified that at all times after he received the injury of January 5, 1940, claimant was permanently and totally disabled, and that while claimant's physical condition had changed a little for the worse since the first injury, his disability remained the same. Asked if the injury sustained on August 10, 1944, was a separate and distinct injury from the one he received in 1940, he said, "Well, I think this is another injury all right on top of the one he received in 1940," and in response to a similar question, "Oh yes, he had another injury at that time. I think he reinjured his back". Asked if he thought claimant could have recovered more than the witness thought he would when the witness examined him in 1940, he said:

"I don't think so. He had a marked anterior displacement of the fifth lumbar vertebra there, and the rule is that once they are displaced they can never be replaced, and any minor stooping and bending will aggravate that condition more. That is my opinion in this case, when he was lifting that heavy box he aggravated that condition."

He testified that claimant had no business trying to do that kind of work, and that he was sure claimant had been warned about it, but that he went ahead and did it anyway until he was injured; that in 1940 witness and other doctors advised claimant that he should not try to do any heavy lifting, but that apparently claimant disregarded that advice, and that the injury of August 10, 1944, caused "the acute condition".

Analysis of the testimony of Dr. White clearly discloses that in his opinion the disability of claimant resulting from the injury of August 10, 1944, was only temporary. He negatives the existence of additional permanent disability resulting from such injury, but states that it was a "reinjury" of claimant's back, and rendered the condition "acute". He nowhere indicates that he considers the acute condition caused by the reinjury permanent, but from his testimony it is fair to conclude that if claimant abstains from manual labor, and gives his back proper care, the acute condition will abate. His testimony clearly shows that claimant's back had not healed, and that there had been no improvement in the condition which rendered him totally and permanently disabled since the injury of 1940.

The testimony of claimant also supports the conclusion of the physicians that the disability resulting from the injury of August 10, 1944, is only temporary. Referring to the injury of 1940, he testified that after that injury he "took it easy" for awhile, and his back got all right, and that he thought he had fully recovered from the injury. There is nothing in the record indicating that a similar course of conduct on his part will not have the same effect on the acute condition caused by the injury of 1944.

It is apparent from the evidence above set forth that the injury of August 10, 1944, while in a sense a new and additional injury, was simply a reinjury or recurrence of the original injury of 1940, and that it did not result in any additional permanent disability to claimant over and above that which he already had as a result of the injury in 1940. The fact that he was able for some time to do the work he did without pain or discomfort in no way contradicts or conflicts with the testimony of the medical experts that his back was in the same condition as it was after the injury in 1940, and that it was such as to wholly disable him from performing such services. From their testimony the danger of a recurrence of the old injury, or a reinjury to his back, was always present. That such injury did not recur sooner was a circumstance which may have been due to good fortune, nor does

it in any way indicate that the 1944 injury caused any additional permanent disability. In fact, his injury indicates that his condition, as testified to by Dr. White, was such that any attempt on his part to engage in any manual labor requiring the lifting of heavy objects was attended with danger of recurring injury.

In Tippitt & Bond v. Moore 167 Okla. 636, 31 P. 2d 853, the recurrence was only three days after the claimant had returned to work. In New York Indemnity Co. v. Miller, 163 Okla. 283, 22 P. 2d 107, there was a lapse of nine months between the two injuries, and we there held that it was for the commission to determine from competent evidence the question of whether the disability sustained should be attributed to the first or second accident. In Brown Bros. v. Parks, 176 Okla. 615, 56 P. 2d 883, a case arising upon a petition for an award because of change of condition, we said:

". . . There was ample evidence to show that the respondent was suffering more pain than at the previous hearing before the commission, but none whatsoever to show that there had been any change in his physical ability to perform work or labor, but, on the contrary, the record clearly shows that he was totally and permanently disabled at the time of the order of the commission dated September 25, 1934, and that he was likewise totally and permanently disabled on July 22, 1935, when the present order and award was made. Where one is totally and permanently disabled, this constitutes the ultimate in disabilities, and there can be no increase of disability in such case . . .".

In Rock Island Coal Mining Co. v. United States F. & G. Co., 112 Okla. 250, 240 P. 635, the claimant injured his right foot in 1921. The injury never completely healed, although he was able to return to work. He received another injury in 1926, and the commission found that claimant's impairment resulted from the 1921 injury. In affirming the award, we said:

". . . This condition was a resulting and continuing injury from the accident suffered in 1921. There is a marked distinction between the condition which impaired the physical ability of the employee as shown by the findings of fact, and that resulting from an injury which is in the nature of stimulating some latent physical impairment, or disease. . . .".

In Continental Casualty Co. v. Industrial Commission 63 Utah, 59, 221 P. 852, the employee received an injury to his right arm on July 18, 1922, and thereafter, on December 4, 1922, received another injury to the same arm. The only physician who testified said, in substance, that the second injury was a recurrence of the first injury, and the Supreme Court of Utah vacated an award for the second injury made against a different insurance carrier than the one liable for the first injury.

While the quotation from Brown Bros. v. Parks, supra, might not be applicable to all cases where the workman has received an award for total permanent disability, and thereafter re-engages in labor and is again injured, resulting in the loss of use of a different member, we think it applicable to the situation in this case, where the second injury is shown by the evidence to be attributable solely to a condition caused by the first injury.

Claimant cites and relies upon Asplund Const. Co. v. State Industrial Commission, 185 Okla. 171, 90 P. 2d 642. In that case claimant, on June 30, 1920, received a fractured vertebra and received compensation for permanent total disability. On July 20, 1936, while working for a different employer, he sustained another injury in the same place, and an award for temporary total disability was made, which was appealed to this court. In holding that such award was proper, we pointed out that it was only for temporary total disability, and that there was abundant evidence showing that claimant had recovered from the first injury, and returned to the field of industrial activity for a period of almost eight years. There is no such evidence in the instant case,

but the evidence before us completely refutes the theory of recovery from the prior injury.

In Dierks Lbr. & Coal Co. v. Lindley, 182 Okla. 185, 77 P. 2d 44, the claimant was awarded compensation for permanent total disability caused by hernia. The contention was made that such award was not supported by the evidence because it was shown that the claimant actually performed work of substantially the same kind and character after his injury that he had theretofore performed. We held that the rule that a disability could not be classified as total where the earning power was not wholly destroyed, and capacity to perform remunerative employment remained, did not include cases where the employee could not follow a substantially gainful occupation without material injury to his health or danger to his life.

In the instant case the evidence clearly establishes that from and after the injury he received in 1940 the performance by claimant of labor involving the lifting of heavy weights was constantly attended by danger of recurring injury to his back; that therefore he was totally and permanently disabled for the performance of such work from and after he received the injury in 1940. There is in the record no competent evidence of any additional permanent disability sustained by him as the result of the injury of August 10, 1944. It follows that the award made by the commission of 33 1/3 per cent additional disability as the result of said last mentioned injury is not sustained by competent evidence.

Award vacated.

GIBSON, C.J., HURST, V.C.J., and RILEY, BAYLESS, WELCH, and DAVISON, JJ., concur.