SINCLAIR REFINING COMPANY, Petitioner,

v.

Theodore J. DUNCAN and State Industrial Commission, Respondents.

No. 36832.

Supreme Court of Oklahoma.

May 15, 1956.

Rehearing Denied June 19, 1956.

Clayton B. Pierce, Oklahoma City, Sloan Blair, Fort Worth, Tex., of counsel, for petitioner,

Poe, Murdock & Landford, Floyd L. Walker, Tulsa, Mac Q. Williamson, Atty. Gen., for respondents.

CORN, Justice.

On February 1, 1946, Theodore J. Duncan, referred to as respondent herein, filed a claim for compensation against Sinclair Refining Company, own risk carrier, referred to as petitioner herein, in which he states that on the 26th day of December, 1945, while in the employ of petitioner he sustained an accidental injury consisting of an injury to his back resulting in some permanent disability to his person. The injury occurred while he was engaged in unloading heavy sacks of clay from a trailer, when a sack weighing about 150 pounds, fell from the trailer and struck him on the back.

Under order of the Commission entered on the 22nd day of October, 1946, respondent was awarded temporary compensation from January 30, 1946 to October 24, 1946, or 38 weeks at $21.00 per week, amounting to the sum of $798, and ordered and directed petitioner to continue such payments until temporary total disability had ceased.

Petitioner immediately paid the sum found due, $798, and continued temporary total compensation payments until July 16, 1947. Total temporary compensation paid respondent amounted to $1,638.

On the 14th day of April, 1948, the Commission awarded respondent compensation for permanent partial disability in the sum of $3675, based on 35 percent permanent partial disability to his body as a whole. This award has been fully paid and satisfied.

On September 9, 1952, respondent filed a motion to re-open and for additional compensation because of change of condition for the worse, since the prior award was entered.

This motion came on to be heard before a trial commissioner, and on January 24, 1955 he found:

"That claimant has had a change of condition for the worse since this Commission's order of April 12, 1948, and as a result of his change of condition for the worse, claimant now is 50 percent permanently partially disabled, or an increase of 15 percent permanent partial disability to his body as a whole, for which he is entitled to recover from respondent 75 weeks additional compensation at the rate of $21.00 per week, or $1575.00."

And upon such finding entered an award accordingly which was sustained on appeal to the Commission en banc.

Petitioner brings the case here to review this award and contends that there is no competent evidence tending to establish that respondent sustained a change of condition for the worse since the prior award was made, and the Commission was therefore without jurisdiction to enter an award for additional compensation.

At the original hearing respondent testified that on the 26th day of December, 1945, while in the employ of petitioner he sustained an accidental injury to his back, and that such injury was caused in the manner stated in his claim. He continued working for petitioner for about eleven days after which time he discontinued his work because of pain and injury to his back; that he has been unable to do ordinary manual labor since that time. At the hearing on change of condition he likewise so testified, and further testified that he is still unable to work, but that he suffers more pain in his back, hip and legs than he did at the time the original award was entered.

Dr. W. at the original hearing to determine the extent of disability sustained by respondent as a result of his 1945 injury, testified that he first saw respondent shortly after he sustained his injury, and made a report of his findings in which he stated that as a result of his accident respondent sustained an injury to his back and is temporarily totally disabled to perform ordinary manual labor, and is entitled to further medical treatment. He continued to treat respondent at various times for about one year. He was treating him for a back injury. He took x-rays of his back which showed negative and showed no injury to his back. He further testified:

"There was some subsequent findings, which I didn't discover myself, but which were discovered by Doctor Lowe on some x-rays taken higher up in the thoracic area. On findings of one of these places, it appears suspicious, very suspicious of a disc injury between the fifth and sixth thoracic vertebrae or the fourth and fifth or the fifth and sixth. I base that on the fact that in this particular x-ray made by Dr. Lowe, and which I had an occasion to examine, there was some narrowing of the inter-vertebral space which is always suspicious of a disc injury. That is the only finding which I have been able to find or see relative to disc injury."

The doctor further testified that he was of the opinion that respondent, as a result of his injury occurring in December, 1945, had sustained an injured disc. The x-ray showed no such injury but he based his conclusion as to his disability on the complaints made by him. He however further testified, after examination of the x-ray made by Dr. L., that in his opinion respondent had sustained an injured disc and that he is now permanently totally disabled from doing ordinary manual labor.

Dr. L., in his testimony, corroborated the evidence of Dr. W. and also expressed the opinion that respondent, as a result of his 1945 injury, was permanently totally disabled. Several other physicians who also testified at the original hearing stated that they examined respondent numerous times, but had been unable to discover the cause of his difficulty; that from the examinations made including x-ray examination it would appear that he had sustained no disability as a result of his injury but his complaints, if genuine, would indicate that he had sustained an injury and was unable to do ordinary manual labor. There is evidently something wrong with respondent, but they have been unable to discover the cause.

This in substance constitutes the evidence offered at the original hearing upon which the Commission based its award, awarding respondent compensation on the basis of 35 percent permanent partial disability to his body as a whole.

Only two doctors testified at the hearing on change of condition. Dr. S. testified that he first saw and examined respondent on April 4, 1950. He obtained a history of the case from respondent and examined him on different occasions including x-ray examination, and after testifying in detail as to the condition found to exist, stated in his opinion respondent had a constitutional inadequate personality and tends to aggravate his complaints and that as a result of his 1945 injury respondent is suffering from a severe traumatic neurosis; that he is now

unable to do ordinary manual labor and is permanently totally disabled, but that a portion of such disability is due to his constitutional inadequacy; that as a result of his traumatic neurosis he has a disability of from 50 to 70 percent, and that the balance of his disability is due to constitutional inadequacy not related to the injury. The doctor was not qualified, and did not attempt to testify as to any change of condition since the prior award was entered, nor was he qualified to or did he attempt to testify as to what respondent's disability was in 1948 when the original award was entered.

Dr. W., who testified at the original hearing, submitted a written report of his findings at the present hearing in which he states that he first saw and examined respondent on February 16, 1946; that he has examined him on different occasions and has consulted with other physicians regarding his condition, and after stating in detail conditions found to exist, the doctor states that in view of these findings it is his opinion that as a result of his injury sustained on December 26, 1945, respondent is suffering from a severe traumatic neurosis; that his condition has substantially changed for the worse since the first award was made; that respondent's disability has markedly increased and that his ability to exert body functions connected with the performance of labor has markedly changed and decreased since the prior award and, as the result of his neurosis due to the 1945 injury, is now permanently totally disabled from doing ordinary manual labor.

The above report was submitted in evidence subject to the right of counsel for petitioner to later cross-examine the doctor on his report. He was thereafter called for cross-examination and on that examination the doctor testified that he also testified at the original hearing and at that hearing he testified that respondent, as a result of his 1945 injury, was permanently disabled; that such disability was due to an injured disc. The doctor further testified that after consulting with a neurosurgeon and consulting with other physicians, and after further examination, he changed his diagnosis and is now of the opinion that respondent is suffering from severe traumatic neurosis rather than from an injured disc. The doctor, however, further testified that whether respondent's disability is due to neurosis or an injured disc he was permanently and totally disabled in 1948 when the original award was made, and is still permanently totally disabled.

■ Respondent relies on the evidence of this doctor to establish his contention that he has had a change of condition for the worse since the prior award was made. We do not think his evidence sufficient to establish such fact, but we think his evidence taken as a whole establishes the contrary and shows that respondent's condition is the same now as it was in 1948 when the original award was entered. The doctor, however, further testified that he thought a person might be permanently totally disabled and still have a physical change of condition for the worse. This may be true in a sense, but we do not think it true within the meaning of the Workmen's Compensation Law, 85 O.S.1951 § 1 et seq. In Brown Bros. v. Parks, 176 Okl. 615, 56 P.2d 883 we held:

"A permanent total disability is the ultimate in disability, and therefore there can be no change to a greater degree of disability within the meaning of the Workmen's Compensation Act of this state."

See, also, Douglas Aircraft Co., Inc., v. Bounds, 198 Okl. 69, 175 P.2d 342.

Moreover all of the physicians testifying at the former hearing, to determine the extent of permanent disability who expressed any opinion as to the extent of disability sustained by respondent as a result of his 1945 accident, fixed his disability at permanent total.

■ If, therefore, respondent did not receive full compensation to which he was entitled for his injury it was because of error in the judgment of the Commission at the time the original award was entered, and this error cannot now be corrected in this proceeding. See in this connection, Payne Drilling Co. v. Shoemake, 186 Okl. 345, 97 P.2d 881. In the above case we also held:

"Where an injured employee seeks an additional award for an injury which is compensable under the 'other cases' provision of subd. 3, section 13356, O.S.1931, 85 Okla.St.Ann. sec. 22, subd. 3, he has the burden of proving that there has been a change in his physical condition which has lessened his ability to labor and perform work and that such change has occurred since the last prior order or award of the Commission and that it is attributable to the original injury."

There is no evidence whatever tending to show that respondent since the prior award was made has sustained a change in physical condition which has lessened his ability to labor and perform work. The order of the Commission awarding respondent additional compensation because of change of condition for the worse cannot be sustained.

Award vacated.

JOHNSON, C. J., and HALLEY, JACKSON and HUNT, JJ., concur.

WILLIAMS, V. C. J., and DAVISON and BLACKBIRD, JJ., dissent.