93 So.2d 584 (1957)
W.C. DENNIS, d/b/a Allapattah Home & Auto Supply, and National Surety Corporation, Petitioners,
v.
U.L. BROWN, Florida Industrial Commission, and Liberty Mutual Insurance Company, Respondents.
Supreme Court of Florida, Special Division B.
March 13, 1957.
Frank A. Howard, Jr., and Dixon, DeJarnette, Bradford & Williams, Miami, for petitioners.
Cosgrove & Rose, Miami, for U.L. Brown, Blackwell, Walker & Gray, Miami, for Liberty Mutual Ins. Co., and Rodney Durrance, Tallahassee, for Florida Industrial Commission, respondents.
*585 O'CONNELL, Justice.
Dennis, the employer, and his carrier petition this Court for writ of certiorari to review a compensation order of the Florida Industrial Commission. The Commission's order affirmed the order of a deputy commissioner awarding payment of compensation to the respondent, U.L. Brown, for temporary total disability.
In 1949, Brown, the respondent claimant, was seriously injured in the course of his employment with petitioner Dennis. Because of those injuries, claimant was adjudicated totally and permanently disabled and Dennis, through his carrier at that time, paid claimant the maximum benefits then recoverable under the Workmen's Compensation Act, F.S.A. § 440.01 et seq. Medical treatment was continued to be furnished claimant by his employer and the carrier.
In February of 1954, claimant again became employed by the same employer, Dennis. It was necessary for him to wear a brace and use a cane. He could not work outside of the store, as he had done previously as a salesman. He could work only a part of each day. Nevertheless, according to his employer, he was earning the pay he received. On September 30, 1955, claimant fell on a freshly waxed floor and reinjured his back. Dennis' new carrier, National Surety Corp., furnished medical treatment but controverted claim for compensation. The carrier contended claimant had already been compensated by the same employer for permanent total disability and that therefore no further benefits were payable.
The deputy commissioner found the claimant had regained a certain wage earning capacity and was entitled to compensation for temporary total disability due to the second injury, in spite of the previous award of maximum benefits under the Act. Dennis and his carrier applied for review to the full commission. The order of the deputy was affirmed by the full commission, whereupon this petition for writ of certiorari was filed.
Petitioners maintain that claimant was given employment and that he received his earnings out of the generosity, helpfulness and sympathy of his employer and patronizing friends. They say he could not and did not sustain any loss of earning capacity due to the second accident, because at the time thereof he had no earning capacity. Yet they do admit the claimant was selling enough merchandise to earn his salary.
The deputy commissioner found claimant's situation created an enigma. He felt the answer was sought in the 1955 amendment to our Workmen's Compensation Law [which appears now as Section 440.15(5), Subsequent Injury; Special Disability Fund] but that a full answer did not result. He cited in support of his conclusion one case which he felt in point to the instant claim. In that case the claimant had received a 100 per cent permanent disability rating, but the California court allowed compensation for a subsequent accident, upon its interpretation of that state's subsequent injuries legislation. Smith v. Industrial Accident Comm., 1955, 44 Cal.2d 364, 282 P.2d 64. The court stated, 282 P.2d on page 68:
"If an employe may properly be rated at 100 per cent disability to qualify him for the basic form of workmen's compensation, even though his earning power has not in truth, for practical purposes, been impaired, it should be at least equally permissible to penetrate the fiction of 100 per cent disability and accept the truth of his remaining earning ability so that the further truth of a subsequent injury with increased actual disability may be compensated from the fund set up for that purpose."
However, in California a showing of loss of earning power is not a prerequisite to compensation for permanent disability. This fact is stated in the Smith case, supra, and its truth is readily ascertained from referring to the quoted portion set out above. Compensation is based on *586 the physical injury rather than actual loss of earning power, in that state, and therefore we should not rely too heavily on that case in support of the commission's finding. It is settled in this state that the disability is determined not by the functional loss, but by the loss of wage earning ability. Ball v. Mann, Fla. 1954, 75 So.2d 758. However, even in our state we have a schedule of certain injuries which automatically constitute permanent total disability, irrespective of loss in earning power. Section 440.15(1)(b).
Petitioners cite several cases in other jurisdictions which hold that a man cannot be more than totally disabled. O'Brien v. Albert A. Albrecht Co., 1919, 206 Mich. 101, 172 N.W. 601, 6 A.L.R. 1257; Van Tassel v. Basic Refactories Corp., 1926, 216 App.Div. 774, 214 N.Y.S. 491; Harrington v. Department of Labor and Industries, 1941, 9 Wash.2d 1, 113 P.2d 518.
In the Harrington case, the rule of the Van Tassel case is cited. The court, in the Harrington case, said that the mere fact that a workman may recover from an injury which has been classified as a permanent total disability for which he has been fully compensated does not negate the fact he has already received all the benefits allowed for permanent total disability. This statement was made immediately after a statement by the court that the theory upon which compensation is allowed is that the workman has sustained a loss of earning power. An opposite holding was cited by the court in the case of Asplund Const. Co. v. State Industrial Comm., 1939, 185 Okla. 171, 90 P.2d 642, but the Washington court felt a statutory distinction brought such about. It quoted [9 Wash.2d 1, 113 P.2d 520] the applicable Washington statute as providing "should a further accident occur to a workman who has been previously the recipient of a lump sum payment under this act, his future compensation shall be adjudged according to the other provisions of this section and with regard to the combined effect of his injuries and his past receipt of money under this act." Rem Rev.Stat. § 7679(g). The applicable statute in Oklahoma was quoted as providing "the fact that an employee has suffered previous disability, or received compensation therefor, shall not preclude him from compensation for a later injury; but in determining compensation for the later injury his average weekly wages shall be such sum as will reasonably represent his earning capacity at the time of the later injury." 85 O.S. 1951 § 22, subd. 6. The Washington court pointed out that the Oklahoma statute made no distinction as to degrees of disability to which it applied and made no exception of permanent total disability. Because its statute contained language substantially different, the Washington court refused to consider the Asplund case as authority on the question.
It will be noted that the statute in Oklahoma referred to above is quite similar to the language used in our own Workmen's Compensation Act. See Sec. 440.15(5) (c).
The Asplund case was decided in 1939. The question before the court was whether a claimant who had on one date received an injury for which he had been awarded compensation for permanent and total disability could thereafter receive an award for temporary total disability for a second injury. The second injury occurred some sixteen years after the first, while claimant was working for a second employer. For eight years previous to the second injury he had been working at various mechanical and manual labor jobs. The court found the question to be one of first impression and adopted its holding upon its construction of that state's workmen's compensation law. It found the statute did not except a previous permanent total disability when it provided an employee might receive an award even though he had previously received compensation for a prior injury. It therefore concluded the workman was entitled to the additional compensation. In reaching that conclusion it considered that the previous adjudication of total disability *587 by the Industrial Commission was, and of necessity, must have been based upon opinion evidence by doctors. The court said it could not, however, overlook the recuperative powers of nature which in the case of the first injury constituted the final arbiter. The court found the claimant had an earning power, irrespective of the prior adjudication of total permanent disability, and that industry saw fit to use this earning capacity. It concluded that the second award was not erroneous because of the first award for permanent total disability.
We favor the reasoning of the court in the Asplund case. Our statute, while similar in part to that applicable to the Asplund case, goes further, however. It provides that an employee who is suffering from a previous disability shall not receive compensation for a later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with the previous disability. Sec. 440.15(5) (c). In the instant case the second injury resulted in a temporary total disability when considered alone. We have held, in International Paper Co. v. Merchant, Fla. 1955, 77 So.2d 622, that where a claimant had been paid for a permanent partial disability and thereafter developed an occupational disease which left him totally disabled, he was entitled to full compensation for permanent total disability without deduction of payments made on account of the prior injury. We are of the opinion the reasoning of that case may be extended to the circumstances of this case and no violation of Sec. 440.15(5) (c) results.
The following comments are found in 2 Larson's Workmen's Compensation Law, Sec. 59.41-59.43:
"There is sound and practical reason for the generally accepted rule that awards for successive or concurrent permanent injuries should not take the form of weekly payments higher than the weekly maxima for total disability. A man can be no more than totally disabled, and if he is allowed to draw weekly benefits simultaneously from a permanent total and a permanent partial award, it will probably become more profitable for him to be disabled than to be well  a situation which compensation law always studiously avoids in order to prevent inducement to malingering."
The author comments, however, in a footnote, that such argument is open to question, since a schedule award continues to run even if claimant resumes his normal earnings. Therefore, he says, a potential malingerer's choice is between total compensation benefits (some percentage of his wages) plus partial benefits, on the one hand, and full wages plus partial benefits on the other. He goes on to say, immediately after the quotation above:
"However, no such policy applies when, as in many states, there is a maximum-number-of-weeks limit on disability payments including even total disability payments, and a claimant receives, concurrently or successively, an injury constituting total disability and another constituting partial * *. Putting the allowances `end-to-end', so to speak, permits full allowance for the specific losses without the criticised feature of making any weekly payment greater than the wages claimant would get if actually working." (Emphasis ours).
"The capacities of a human being cannot be arbitrarily and finally divided and written off by percentages. The fact that a man has once received compensation as for 50% of total disability does not mean that ever after he is in the eyes of compensation law but half a man, so that he can never again receive a compensation award going beyond the other 50% of total. After having received his prior payments, he may, in future years, be able to resume gainful employment. If so, there is no reason why a disability which would bring anyone else total permanent disability *588 benefits should yield him only half as much."
Finally, Larson comments, concerning an over-all dollar limit on benefits:
"If the maximum is to have any effect, it must be understood to set a limit on the allowance that can be made for a specific damaging result to a particular member manifested at a particular time. As noted above, after time healing and training have done their work, an injured member may again be susceptible to injury for which maximum compensation is appropriate."
It is our view that the foregoing comments lend direct support to our finding in this case. Where necessary the author's comments are susceptible to an extension applicable to the circumstances of the present case. We are of the opinion that an employee, although previously adjudicated permanently and totally disabled and fully compensated therefor, may thereafter acquire a wage earning capacity. If he suffers a subsequent injury which deprives him of such newly acquired wage earning capacity, he may be entitled to compensation for such loss.
Workmen's compensation acts are but statutory creations. Few statutes have achieved perfection in accomplishing their purpose. The statutes themselves may not evince a perfect logic. For instance, many provide that for a permanent and total disability a man shall be compensated at a percentage of his salary for a certain maximum number of weeks, instead of a period based upon some formula with respect to his remaining life expectancy. Due to the impossibility or impracticality of providing for every conceivable factual situation, application of the statute to achieve a known purpose of legislation may sometimes create a technical inconsistency. We feel that workmen's compensation acts were designed to remove from the workman himself the burden of his own injury and disability and place it on the industry which he served. Such acts should be liberally construed with the interest of the working man foremost.
Many acts have provided for subsequent injuries, as ours has done. Special disability funds have been created. Such legislative action was no doubt inspired by desire to encourage employment of handicapped workers. In our state, we have also provided for rehabilitation of injured workers. Sec. 440.49, Fla.Stats. 1955, F.S.A. This provision includes the case of those previously adjudicated permanently and totally disabled. It contemplates the possibility of one so adjudicated again becoming gainfully employed. To construe our law to be that one who has become gainfully employed as a result of rehabilitation, whether through his own efforts or with the aid of the Commission, may not be entitled to compensation for loss of such rehabilitated wage earning capacity due to a subsequent injury is, in our opinion, contrary to what we believe to have been the Legislature's intent, and is contrary to common sense.
The petition for writ of certiorari is therefore denied. However, there appears to be some error in the Commission's computation of the 350 week, period of compensation for the injury sustained on April 14, 1949. Our calculations indicate said first period of compensation should be computed to have expired on the 9th day of January, 1956, rather than on the 15th day of March, 1956, assuming the commencing date to have been April 18, 1949, in accordance with the four-day waiting period. If the Commission finds its calculation to be incorrect, it is directed to modify its order accordingly.
THOMAS, Acting C.J., and DREW and THORNAL, JJ., concur.