HARRISON *v.* LAKEY FOUNDRY COMPANY.

WORKMEN'S COMPENSATION—LEG INJURY—SILICOSIS—WAGE-EARNING CAPACITY.
> Plaintiff workman who sustained a leg injury resulting in total and partial disability for which he was paid workmen's compensation and who later sustained total disability because of silicosis, was not entitled to an award of workmen's compensation on yet later claim made for total disability due to leg injury during the period covered by the award for disability due to silicosis, since he had not suffered 2 losses of wage-earning capacity during the period of time involved (CL 1948, § 411.1 *et seq.*, as amended).

SMITH, KAVANAGH, and SOURIS, JJ., dissenting.

REFERENCES FOR POINTS IN HEADNOTES
58 Am Jur, Workmen's Compensation §§ 295, 296.
Workmen's compensation: Computation of compensation as affected by compensation allowed for previous injury.  96 ALR 1080.

Appeal from Workmen's Compensation Appeal Board. Submitted June 10, 1960. (Docket No. 47, Calendar No. 48,672.) Decided December 1, 1960.

Ford Harrison presented his claim against Lakey Foundry Corporation for continuing compensation for leg injuries following payment for disability because of occupational disease. Compensation denied. Plaintiff appeals. Affirmed.

*Marcus, Kelman, Loria, McCroskey & Finucan* (*Benjamin Marcus*, of counsel), for plaintiff.

*Joseph T. Riley*, for defendant.

CARR, J. The finding of facts in this case as made by the referee and approved by a majority of the members of the appeal board is supported by competent testimony. In May, 1949, plaintiff, while in the employ of defendant, sustained an injury involving a fracture of both legs. He was paid compensation on a voluntary basis for varying periods of total and partial disability, and in December of 1953 an award was entered by the workmen's compensation appeal board in accordance with the payments that had been made. At that time, however, plaintiff was working for defendant in favored employment and his earnings were in excess of his wages at the time of his injury.

In December of 1953 it was discovered that plaintiff was suffering from silicosis which prevented his further employment. He received compensation at the rate of $34 per week, and applications for lump-sum advance payments were granted by the department, so that prior to the filing of the application in the instant proceeding plaintiff had received the maximum amount of $10,500 because of the disability resulting from silicosis.

In September of 1958 plaintiff filed an application for an award of compensation because of disability claimed to have resulted from the 1949 injury. Such application was based on the theory that he was entitled to receive compensation because of the disability resulting from the injured legs during the same period of time that he was receiving the award based on the finding of silicosis and the total disability resulting therefrom. This claim presents the issue in the case, that is, whether plaintiff is entitled to compensation because of the 1949 injuries during the period of time for which he was compensated for total disability resulting from the condition discovered in 1953. This involves a question of statutory construction. Does the workmen's compensation act* entitle plaintiff to the award which he claims?

The referee entered an order denying the award sought and the majority of the appeal board, one commissioner dissenting, affirmed. In rendering its decision the appeal board pointed out that plaintiff had not suffered 2 losses of wage-earning capacity during the period of time involved in the case. Obviously such was the situation. Under the provisions of the statute plaintiff's claim was not well-founded. The controlling language of the compensation act does not permit such an award.

The order of the appeal board should be affirmed.

DETHMERS, C. J., and KELLY and BLACK, JJ., concurred with CARR, J.

SMITH, J. (*dissenting*). The defendant Lakey Foundry Corporation has phrased the question well. It is as follows:

"We know of no greater disability than total disability and we do not believe there can be any greater

---

* PA 1912 (1st Ex Sess), No 10, as amended (CL 1948, § 411.1 *et seq.*, as amended [Stat Ann 1960 Rev § 17.141 *et seq.*]).

form of disability than total disability. The way we understand plaintiff's contentions is that he had concurring total disabilities. The statute (CL 1948, § 412.9 [Stat Ann 1947 Cum Supp § 17.159]) speaks of total incapacity for work resulting from the injury and there is an admitted holding by the appeal board that plaintiff was totally disabled from the May, 1949, injury. This total disability continued.  *  *  *

"Plaintiff has been found to be totally disabled from the May, 1949, injury. Plaintiff cannot be totally disabled more than once. The statute fixes maximums for total disability and plaintiff has received the maximum for total disability."

Here we consider once again the "windfall" doctrine.[1] Shortly put it is simply this: that if industrial disablement is suffered by one who has been theretofore disabled, and is drawing compensation therefor, no compensation need be paid for both disablements, but only for one. If anyone else had suffered the same disability, compensation would have been paid. But because the victim here is hurt twice the employer need pay but once. Hence it is said the employer gets a "windfall" at the expense of the injured workman. Only statutory command the most compelling, the most unequivocal, could justify a result so at variance with the act's beneficent purposes. But the command is not there. If it is to be inserted into the act, it is we who must read it in. It will be judge-made law. I reject it.

There are not many cases on the point. The older cases, it seems fair to say, denied compensation. An early Michigan case, *O'Brien* v. *Albert A. Albrecht Co.*, 206 Mich 101 (6 ALR 1257), was among the number. It was a part of the many harsh interpretations of the act going to make up Michigan's "bad

---

1. See 20 La L Rev 109 (1959).

eminence"[2] in the field of compensation law. We need not analyze once more these ancient errors.

The problem arises in many ways. There may be an award for amputations to be paid concurrently with the payment of award for prior-incurred disability (the *Jones Case*[3]). There may be an award for a prior disability to be paid concurrently with an award arising from an occupational disease (this case). There may be 2 successive accidents involved, or 2 successive occupational diseases, or other combinations of disease or injury. The principle involved in all is the same, namely, the application of the windfall doctrine. The *Jones Case* presents merely one phase of the application of a basic principle, and possibly the simplest, since in it (having a schedule award) we do not grapple with what the appeal board here describes as a second wage loss which "completely enveloped the first." But it is a complete *non sequitur* to argue that since the *Jones Case* involved a concurrent schedule award plus a disability award, therefore, concurrent disability and occupational disease awards before us are illegal.

Upon what theory may compensation be denied one who has suffered an industrial disability because of his employment? Let no one imagine that there is a specific statutory bar to the payment of compensation for the second injury. The statute itself does not in terms cover the problem. The defendant resists payment in reliance upon the following statute:[4]

"While the incapacity for work resulting from the injury is total, the employer shall pay, or cause to be

---

[2] Dean Emeritus Roscoe Pound, quoted in dissent, *Mack* v. *Reo Motors, Inc.*, 345 Mich 268, 281.

[3] *Jones* v. *Cutler Oil Co.*, 356 Mich 487.

[4] CL 1948, § 412.9 (Stat Ann 1947 Cum Supp § 17.159).

paid as hereinafter provided, to the injured employee, a weekly compensation of 66–2/3% of his average weekly wages, but not more than" [here follow dollar amounts scaled according to number of dependents].

Does the above, as defendant argues, mean that "the maximum payable *for any and all injuries*" shall be only so much? If so, only the first accident need be paid for. The next is free. Or does it, as plaintiff argues, mean that "the maximum payable *for any one injury*" shall be as specified? If this is its meaning, then no covered disability shall be without compensation, whether it runs concurrently with another or not.

This, it will be noted, is a case that cannot be answered by the argument that the legislature has spoken and that it is our duty to wait for the legislature to make changes. Here the legislature has not spoken. There is a gap in the statute. We must fill it in. It begs the question to say that the legislature has spoken either way.

The answer as to our choice of interpretations will be found, not in any single phrase of the act but in the intent of the legislature, clearly discernible from our past determinations thereof. It was almost a quarter-century ago when we wrote,[5] unanimously, that:

"Its [the workmen's compensation act] enactment marked the crystallization into a legislative enactment of the economic fact that the ultimate consumer pays for the compensation of injured employees in the increased cost of the product. It aims at compensation, not damages. It is wholly substitutional in character and displaces the common-law liability for negligence. It should be administered substantially as insurance of a social character. Claimant had no action in law or in equity against his employ-

5 *Hebert* v. *Ford Motor Co.*, 285 Mich 607, 610.

er. Proceedings under the workmen's compensation act are purely statutory,—administrative, not judicial,—inquisitorial, not contentious,—disposed of, not by litigation and ultimate judgment, but summarily. Most of the difficulties now encountered in the administration of the workmen's compensation act arise from injudicious attempts, sometimes acquiesced in, to engraft upon the workmen's compensation act common-law theories at variance with its spirit and intent."

The intent of the act, as above described, is that the cost of the product must bear the expense not only of the inanimate machinery worn out in its production but that of human expenditure as well. Expenses of repair and replacement of machinery were always passed on to the consumer. But prior to the passage of the workmen's compensation acts the injured workman was left to bear his own loss alone, save as he was able to establish that the negligence of his employer caused the injury, and here he was met by the baleful trio of assumption of risk, contributory negligence, and the fellow-servant rule.

I cannot, consonant with the intent of the act, assume that such a disability as we here consider, arising out of and in the course of employment, and otherwise compensable, is to be free of liability because compensation is also being paid for another disability. It is an odd perversion of logic and experience (and, we repeat, unwarranted in the language or the intent of the compensation act) to argue that the onset of silicosis in some way cured the leg condition, or relieved the employer from liability for the leg injuries. The cost of a product may be reckoned in terms of one injury or several. There is no warrant for restricting the cost to a portion, only, of the injuries suffered. To do so may cheapen the cost to the ultimate consumer, but it is a cheapening dearly bought in terms of human values and

wholly inconsistent with the intent of the act. If, indeed, there is no compensation payable for this injury, has the employee lost also his common-law remedy for the injury? If he has, a constitutional problem of real magnitude may be faced. If he has not, then we have, at long last, come full circle and once more the common-law courts will face injured workmen and the pernicious trinity which gave rise to the compensation acts in the first place: assumption of risk, contributory negligence, and the fellow-servant doctrine.

We observed heretofore that certain of the earlier rulings on this issue were largely restrictive. Such, however, was not the result of all, here or abroad, nor is it the result of the more modern cases. In addition to the cases cited in *Jones* v. *Cutler Oil, supra,* holding that the maximum in the statutes pertained only to one injury, see, also, *Asplund Construction Co.* v. *State Industrial Commission* (1939), 185 Okla 171 (90 P2d 642); and *Bethlehem Steel Co.* v. *Dempsey* (1956), 94 Ga App 408 (94 SE2d 749). In all of these cases, of course, there are minor statutory differences between their acts and our own. In none, however, is the difference one of substance as regards our problem. In the latter case, for example, we find no real difference in the statute. The applicable Georgia statute will be placed side by side with our own so that the necessary comparisons may be made:

| Georgia | Michigan |
|---|---|
| "When the incapacity to work resulting from an injury is total, the employer shall pay or cause to be paid, as hereinafter provided for, | "While the incapacity for work resulting from the injury is total, the employer shall pay, or cause to be paid as hereinafter provided, |
| to the employee during such total incapacity | to the injured employee, |
| a weekly compensation equal to *** | a weekly compensation equal to *** |
| but not more than ***." | but not more than ***." |
| Code of Ga Ann § 114–404. | CL 1948, § 412.9 (Stat Ann 1947 Cum Supp § 17.159). |

The court held as follows with respect to the proper interpretation of the quoted section (p 409):

"Code, § 114–404 deals with the amount of compensation allowable for an injury and the maximum compensation allowable in each case; it does not set forth the amount of compensation allowable to an employee from all injuries and in all cases involving that employee. Therefore, in view of what has been said above, and in view of the fact that the act is to be liberally construed in order to effect its general purpose, *Van Treeck* v. *Travelers Ins. Co.*, 157 Ga 204 (121 SE 215); *Austin Brothers Bridge Co.* v. *Whitmire,* 31 Ga App 560 (121 SE 345), this court must hold that the limit referred to in Code, § 114–404 is the limit for which compensation may be paid as the result of one injury and not the limit that an employee can draw regardless of the number of injuries he may be unfortunate enough to suffer."

The gist of the matter is this: A man, even one legally defined as "totally disabled," may acquire, develop, and sell on the market whatever rudimentary skills remain in him. In modern times we encourage his so doing, seeking to avoid, so far as possible, the aid of public or private charity. In short, rehabilitation is fostered. Should a man so courageous be again disabled, I find nothing in the act saying that he shall not receive concurrent compensation.[6] To me the answer is that he has concurrent injuries. They were incurred in the manufacture of the product. That the product should bear such losses is the basic principle of compensation law.

The order should be reversed and remanded for further proceedings not inconsistent herewith. Costs to appellant.

---

[6] We note that the total of payments for both injuries ($21 for the leg injury, plus $34 for the silicosis) would be less than the wage he received either at the time of the first injury ($60.80 in 1949) or the subsequent disablement ($76.40 in 1953).

KAVANAGH, and SOURIS, JJ., concurred with SMITH, J.

EDWARDS, J. (*concurring*). This appeal suggests to us that the Michigan workmen's compensation act provides for the concurrent payment of 2 workmen's compensation total disability awards to the same person, covering the same weeks of disability, provided that it be shown that he is suffering from 2 separate disabilities, either of which would occasion total disability.

The majority of the workmen's compensation appeal board held to the contrary. The majority opinion said:

"The question is whether or not the plaintiff's disability from his 1949 injury can be compensated during the concurrent period of time for which he has been compensated for total disability due to his 1953 injury. Plaintiff's average weekly wage at the time of his 1949 injury was $60.80. His maximum compensation rate was $21 a week. His average weekly wage at the time of second injury is reported as $76.40 and his compensation rate has been $34 a week. * * * In this case the plaintiff's earnings at the time of the second injury were substantially greater than his earnings at the time of his first injury. His second earnings during the time of their continuance completely substituted for his right to compensation for his first injury. Insofar as wage-earning capacity is concerned he did not have 2 wage-earning capacities to lose as his second loss completely enveloped the first.

"The plaintiff has suffered 2 injuries. He is totally disabled by reason of each injury independent of the other. However he has not suffered, compensation wise, 2 losses of wage-earning capacity during the period of time herein involved. The award of Referee Weber is, therefore, affirmed.

"The plaintiff is, of course, entitled to further medical care for his 1949 injury to the extent that it is medically advisable that he receive it."

This reasoning seems wholly in accordance with the language, limitations and intent of the workmen's compensation act. The section dealing with total disability* provides in its first sentence for a dollar

---

* "Sec. 9 (a) While the incapacity for work resulting from the injury is total, the employer shall pay, or cause to be paid as hereinafter provided, to the injured employee, a weekly compensation of 66-2/3% of his average weekly wages, but not more than $33 if such injured employee has no dependents; $36 per week if 1 dependent; $40 if 2 dependents; $45 if 3 dependents; $51 if 4 dependents and $57 if 5 or more dependents. Weekly payments shall in no event be less than $18 if there are no dependents; $20 if 1 dependent; $22 if 2 dependents; $24 if 3 dependents; $26 if 4 dependents; and $28 if 5 or more dependents, and in no case shall the period covered by such compensation be greater than 500 weeks from the date of injury, nor shall the total compensation exceed an amount equal to 500 times the total weekly amount payable under this section 9, except for permanent and total disability as defined in sections 8a and 10, when the compensation shall be paid for the duration of such permanent and total disability: Provided, That the conclusive presumption of total and permanent disability shall not extend beyond 800 weeks from the date of injury, and thereafter the question of permanent and total disability shall be determined in accordance with the fact, as the fact may be at that time. Any permanently and totally disabled person as defined in sections 8a and 10 who, on or after June 25, 1955, is entitled to receive payments of workmen's compensation under this act in amounts per week of less than is presently provided in the workmen's compensation schedule of benefits for permanent and total disability and for a lesser number of weeks than the duration of such permanent and total disability shall after the effective date of this amendatory act receive weekly, without application, from the second injury fund, an amount equal to the difference between what he is now receiving per week and the amount per week now provided for permanent and total disability with appropriate application of the provisions of paragraphs (b), (c), (d) and (e) of this section since the date of injury. Payments from this second injury fund shall continue after the period for which any such person is otherwise entitled to compensation under this act for the duration of such permanent and total disability according to the full rate provided in the schedule of benefits.

"(b) For the purposes of this section and of section 10, dependency shall be determined as follows:

"The following persons shall be conclusively presumed to be dependent for support upon an injured employee:

"1. The wife of an injured employee living with such employee as such wife at the time of the injury.

"2. A child under the age of 16 years, or over said age, if physically or mentally incapacitated from earning, living with his parent at the time of the injury of such parent.

"(c) In all other cases questions of dependency shall be determined in accordance with the fact, as the fact may be at the time of the injury. No person shall be considered a dependent unless he or she is a member of the family of the injured employee, or

ceiling on the weekly compensation to be paid "while the incapacity for work resulting from the injury is total." It also expresses the compensation to be paid in terms of percentage of the employee's weekly wage, with added increments for each dependent, and with the total to be reduced when a dependent reached 21. The section also provides for supplementation of the weekly compensation by the second injury fund when the sum due from the particular employer is deemed too low. The benefits under the act are thus related to the employee's disability, to his previous earnings and to the needs of his family, rather than constituting a specific sum of the nature of tort damages. This concept is illustrated further in CLS 1956, § 412.10 (Stat Ann 1960 Rev § 17.160), dealing with partial incapacity:

"The amounts specified in this cause are all subject to the same limitations as to maximum and minimum as above stated. In case of the loss of 1 member while compensation is being paid for the loss of another member, compensation shall be paid for the loss of the second member for the period herein provided, payments to begin at the conclusion of the payments for the first member."

---

unless such person bears to such injured employee the relation of husband or wife, or lineal descendant, or ancestor or brother or sister. Except as to those conclusively presumed to be dependents, no person shall be deemed a dependent who receives less than 1/2 of his support from an injured employee.

"(d) Weekly payments to any injured employee shall be reduced by the additional amount provided for any dependent child or husband or wife or other dependent when such child either reaches the age of 21 years or after becoming 16 ceases for a period of 6 months to receive more than 1/2 of his support from such injured employee, if at such time he or she is neither physically nor mentally incapacitated from earning, or when such husband or wife shall be divorced by final decree from his or her injured spouse, or when such child, husband or wife, or other dependent shall be deceased.

"(e) No increase in payments shall be made for increased numbers of dependents not so dependent at the time of the injury of an employee." CLS 1956, § 412.9 (Stat Ann 1960 Rev § 17.159).

It is also illustrated in CL 1948, § 412.11 (Stat Ann 1960 Rev § 17.161), which provides:

"The compensation payable, when added to his wage earning capacity after the injury in the same or another employment, shall not exceed his average weekly earnings at the time of such injury."

It is still further illustrated by CL 1948, § 412.12 (Stat Ann 1960 Rev § 17.162), which provides that death terminates all liability from pre-existing injuries as to the individual's estate, and conditions further compensation upon the existence of dependents:

"The death of the injured employee prior to the expiration of the period within which he would receive such weekly payments shall be deemed to end such disability, and all liability for the remainder of such payments which he would have received in case he had lived shall be terminated, but the employer shall thereupon be liable for the following death benefits in lieu of any further disability indemnity:"

While I recognize that none of these sections specifically interdicts the ingenious argument which appellant's counsel has propounded to us, they do serve to illustrate that the interpretation he urges would be fundamentally inconsistent with the nature of the act.

Larson, in dealing with the underlying concept of workmen's compensation, uses these words in contrasting it to tort damages:

"In compensation, unlike tort, the only injuries compensated for are those which produce disability and thereby presumably affect earning power.

"For this reason, some classes of injuries which result in verdicts of thousands of dollars at common law produce no award whatever under a compensation statute. For example, while common-law verdicts of great size are common for facial disfigure-

ment, it is usually held that, in the absence of an express provision making disfigurement compensable, no allowance can be made for it. More than half of the States now have such express provisions, but, significantly, the basis in most instances is still the argument that a repellent appearance may diminish the claimant's chances of obtaining and holding employment. Similarly, impairment or destruction of sexual potency is not in itself a basis for an award, and, presumably the same result would apply to such an injury as destruction of childbearing capacity in a woman.

"The limitation of compensation to 'disability' also runs consistently through all questions of elements of damage. To take a familiar example: there is no place in compensation law for damages on account of pain and suffering, however dreadful they may be. So also in death benefit cases, compensation law refuses to recognize such items as loss of consortium or conscious suffering of the deceased in the interval preceding death.

"A compensation system, unlike a tort recovery, does not pretend to restore to the claimant what he has lost; it gives him a sum which, added to his remaining earning ability, if any, will presumably enable him to exist without being a burden to others." 1 Larson, Workmen's Compensation Law, §§ 2.40, 2.50.

I agree with Mr. Justice CARR that the language of the workmen's compensation statute cannot, consistent with the legislative intent demonstrated in the scheme of the act, be interpreted as affording 2 awards for total disability for the same period of time.