120 So.2d 596 (1960)
PORT EVERGLADES TERMINAL CO., Inc., and Bituminous Casualty Corporation, Petitioners,
v.
Allan CANTY and the Florida Industrial Commission, Respondents.
Allan CANTY, Petitioner,
v.
PORT EVERGLADES TERMINAL COMPANY, Inc., Bituminous Casualty Corporation and the Florida Industrial Commission, Respondents.
Supreme Court of Florida.
May 11, 1960.
*598 Lally & Miller, Miami, for Port Everglades Terminal Co., Inc. and Bituminous Casualty Corporation, petitioners-respondents.
Nadler & Tunick, Miami, for Allan Canty, respondent-petitioner.
Paul E. Speh, Tallahassee, for Florida Industrial Commission, respondent.
ROBERTS, Justice.
We here review on certiorari, upon the petition of the employer and its carrier, an order of the Florida Industrial Commission affirming an award of workman's compensation made by the Deputy Commissioner to the claimant, respondent here, for total permanent disability, but reducing the amount of the fee for claimant's attorney awarded by the Deputy Commissioner. In their petition the employer and carrier contend that the evidence does not support a finding of total permanent disability and that it was error to award a fee in any amount to claimant's attorney in the absence of evidence as to the reasonable value of his services. By cross-petition for *599 certiorari, the claimant's attorney contends that the Commission erred in reducing the amount of the attorney's fee awarded to him by the Deputy Commissioner.
The claimant's injury  a herniated intervertebral disc  has left him, after two operations, with a 30 percent functional disability of the body as a whole. Testimony of the claimant and his physicians shows conclusively that claimant is able to perform unskilled manual labor that does not require heavy lifting and that will permit him to move around  the shifting of position being necessitated, according to claimant, because of the pain that he suffers "24 hours a day." Claimant testified as to his efforts at obtaining employment since his accident, estimating that he had applied for 75 or 80 jobs. Many prospective employers refused to employ him when they found out about his injury, he said. He was, however, able to obtain and to hold, for varying periods of time, a number of jobs involving light work. He left one in order to have his second back operation and another when he became ill with the "flu". The others he was unable to retain, he said, because of his "handicap"  either because he was unable to move around fast enough or could not lift heavy objects. An attempt at vocational rehabilitation training made in 1958  to learn television repairing  was unsuccessful. It was also shown that claimant had not applied for work at several places generally employing handicapped persons.
Based on this evidence the Deputy Commissioner made the following findings of facts: that after recuperating from his first operation claimant "sought employment in various places but because of his injury was unable to hold any one job for more than a week or two"; that, following his second operation, "claimant sought employment in various jobs with little success. He registered with the Florida State Employment Service, was sent out on several jobs, but was not hired because of his injury"; that "because of his inability to sit or stand for long periods of time, and pre-occupation with pain, he was unable to continue [his vocational rehabilitation training];" that "all of his adult life [claimant] has done an unskilled type of manual labor" and "has an education of nine grades of school;" that claimant "has a functional disability of 30% of the body as a whole but has no earning capacity." The Deputy Commissioner concluded that "claimant is permanently and totally disabled and, as a practical matter, has been so since his accident in November of 1955."
On review, the Full Commission affirmed the finding of total disability. After noting that the claimant had had "little success" in his attempts to obtain employment and was compelled to move about "continually" because of his pain, the Commission's order stated that "there is competent substantial evidence to sustain the Deputy Commissioner's finding that claimant is permanently totally disabled, and, as a result, suffers a 100 per cent loss of wage-earning capacity."
In their petition here the employer and carrier contend that the claimant's own testimony shows that he was able to obtain and satisfactorily perform light work in a shoe store and in a car rental agency; and that, even though he is unable at the moment to find a similar type of employment, a finding that he is totally permanently disabled is unauthorized under our statute defining "disability" as "incapacity because of the injury to earn in the same or any other employment the wages which the employee was receiving at the time of the injury," § 440.02(9), Fla. Stat., F.S.A., and the decision of this court in International Minerals & Chemical Corp. v. Tucker, Fla. 1951, 55 So.2d 720, 722.
In the International Minerals case, supra, this court held that a finding of total disability was unwarranted "where the evidence, without conflict, supports the contention that the petitioner was able to engage in a gainful occupation, although different from his usual vocation as a mechanic * * *". In so holding, this *600 court said, "If petitioner's earning power is not wholly destroyed, certainly he is not totally incapacitated. See 58 Am.Jur. 778, section 283." The text authority cited states that "* * * incapacity or disability cannot be found to be total where it appears that the claimant's earning power is not wholly destroyed and that he is still capable of performing remunerative employment."
It will have been noted that the Deputy Commissioner made no finding that claimant was not "capable of performing remunerative employment"  and, indeed, such a finding would not have been supported by the evidence, since it is undisputed that claimant is capable of performing some types of light work. His finding of total permanent disability was apparently based on the fact that claimant has been unable to find employment in the general labor market. This is indicated by his remarks made at the conclusion of the hearing when, after referring to testimony elicited from the claimant upon cross-examination concerning various employment opportunities for which claimant admittedly had not applied, he said:
"Also, the fact that the claimant might be able to obtain work with Mr. Axlrod who hired handicapped people, isn't the test; the test is whether or not he is available for the general labor market and if it is felt he could possibly be trained for it."
The Deputy Commissioner must have had in mind the test of "ability to compete in the open labor market" approved by this court in Southern Bell Tel. & Tel. Co. v. Bell, Fla. 1959, 116 So.2d 617, 621, as one of the factors which may be considered in determining the degree of permanent partial disability resulting from an industrial accident. In holding that a claimant who was earning more after the accident than he did before could, nevertheless, be found to have sustained some loss of earning capacity, this court said:
"The difference in ability of a claimant to compete in the open labor market, before and after a compensable non-scheduled injury, is a proper means of determining the loss in earning capacity only if in applying the test all factors which could bear on the claimant's ability to compete and earn are considered; these factors include the variables mentioned in Ball v. Mann, supra [75 So.2d 758], and evidence of his ability to compete as measured by his earnings at the time the test is applied."
One of the "variables" mentioned in Ball v. Mann, supra [75 So.2d 758]  also a case involving the degree of permanent partial disability for which claimant was entitled to be compensated  was "inability to obtain the type of work which he can do insofar as affected by the injury." This court has not heretofore considered the impact of this factor on a case of claimed permanent total disability. It is said by Larson in his work on Workmen's Compensation Law, § 57.51, that most modern courts follow the rule stated in Lee v. Minneapolis St. Ry. Co., 230 Minn. 315. 41 N.W.2d 433, 436, 437, as follows
"An employe who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, may well be classified as totally disabled."
All courts agree that a workman need not be absolutely helpless or physically broken and wrecked for all purposes except merely to live, in order to be found totally and permanently disabled within the meaning of our workmen's compensation law. "And though `able to obtain occasional employment under rare conditions and at small remuneration' (the equivalent of precarious employment at half salary through family influence, as a matter of charity, or the recognition of a moral responsibility, or as a mere gratuity), one *601 may still `be totally disabled for all practical purposes of competing for remunerative employment in any general field of human endeavor.'" Rio Grande Motor Way v. De Merschman, 100 Colo. 421, 68 P.2d 446, 447.
Remembering, however, that it is the intention of our workmen's compensation law to compensate an injured workman only for the loss of earning capacity attributable to and resulting from an industrial injury, Southern Bell Tel. & Tel. Co. v. Bell, supra, 116 So.2d 617, and not for the loss of earnings or for pain and suffering resulting therefrom, cf. Grice v. Suwannee Lumber Mfg. Company, Fla.App. 1959, 113 So.2d 742, it would seem, and we hold, that an allowance of compensation for total permanent disability should never be made solely on the basis of the inability of the claimant to secure the kind of work he can do, cf. Southern Bell Tel. & Tel. Co. v. Bell, supra. As stated in Unora v. Glen Alden Coal Co., 1954, 377 Pa. 7, 104 A.2d 104, 107, and we agree:
"Thus, the determination of total disability is one which requires a consideration and weighing (in addition to the anatomical facts) of such factors as the claimant's mental outlook, his industrial background, his education, the occupation, if any, he could perform where his particular physical impairment would not be a total bar, and whether such work exists. Where the injured person can handle only a specially-created job, one light of effort and responsibility but laden with rest and comfort (employment plums that do not often dangle from the tree of everyday economics) the burden is on the defendant-employer to show that such a job is in fact within reach. If proof of that fact is not presented, the claimant then is entitled to a finding of total disability."
The distinction between permanent partial and permanent total disability has been well stated by the Pennsylvania Superior Court in Earley v. Philadelphia & Reading Coal & Iron Co., 144 Pa.Super. 301, 19 A.2d 615, 617, as follows:
"The first includes persons who have sustained accidental injuries, but are capable of steadily performing certain types of light work. It is presumed that such work is available, and that one can procure it. In those circumstances a claimant is entitled to compensation for partial disability. The second class embraces those who are not able uninterruptedly to do even light work owing to their physical limitations due to accidental injuries. If suitable work is available for such a person it is incumbent upon the defendant to show that fact, otherwise a claimant is entitled to total disability."
Accord: Cohen v. Doubleday & Company, 1959, 191 Pa.Super. 106, 155 A.2d 378; see also Sorby v. Three Rivers Motors, 1955, 178 Pa.Super. 187, 114 A.2d 347.
In view of the paucity of the findings of fact made by the Deputy Commissioner and the fact that his conclusion of "total permanent disability" was apparently based solely on the inability of the claimant to obtain employment in the "general" labor market, we think the ends of justice would be best served by quashing the order of the Commission affirming the award of compensation for total permanent disability made by the Deputy Commissioner, with directions to remand the cause to the Deputy Commissioner for reconsideration and more detailed findings of fact and his conclusion based thereon in the light of the opinions herein expressed.
The petitioners' contention respecting the propriety of an award of a fee to claimant's attorney in the absence of any evidence as to the reasonable value thereof is also well taken. See Florida Silica Sand Co., Inc. v. Parker, Fla., 118 So.2d 2. Under the authority of that decision, *602 the order of the Commission reducing the amount of the attorney's fee awarded by the Deputy Commissioner must be quashed, with directions to reverse the order of the Deputy Commissioner fixing the amount of such fee and with further directions to the Deputy to make additional findings as to the amount of a reasonable fee on the basis of evidence to be submitted in accordance with the opinions therein expressed.
In this connection, it is pertinent to note that the workmen's compensation law was intended to provide a direct, informal and inexpensive method of relieving society of the burden of caring for injured workmen and to place the responsibility on the industry served. Under the Act, if an injured employee is entitled to recover at all, the amount is fixed and definite, not contingent. While we do not intend to minimize the value of an attorney's services in compensation cases generally, nor in the instant case in particular, it is noteworthy that, in actual practice, "a simple letter to the commission advising of claimant's belief that he is entitled to compensation is treated as a claim and activates the processing of the matter as such." A.B. Taff & Sons v. Clark, Fla.App. 1959, 110 So.2d 428, 434. In order to recover an award for his attorney's fee, it is incumbent upon the claimant to show that it was necessary, and not merely expedient, to employ an attorney to represent him. A.B. Taff & Sons v. Clark, supra, 110 So.2d 428.
It should also be pointed out that the minimum schedule of fees promulgated by the Florida Industrial Commission to be used as a guide by the deputy commissioners  said by this court in the Florida Silica Sand Co., Inc., case, supra, 118 So.2d 2, 5, to be "helpful but * * * not conclusive"  is especially unreliable in cases involving an award of total permanent disability. This is so because the payments of compensation for total permanent disability are to be continued only "during the continuance of such total disability", § 440.15(1) (a), Fla. Stat., F.S.A.; and the claimant may, in the natural and normal course of events, acquire a wage-earning capacity, see Dennis v. Brown, Fla. 1957, 93 So.2d 584, or he may acquire a wage-earning capacity through the vocational rehabilitation procedures not only authorized but required by the statute, § 440.49, Fla. Stat., F.S.A. Thus, the consideration of the "benefits resulting to the client from the services"  one of the items listed in Canon 12, 31 F.S.A., respecting attorney's fees  if based on the amount which might be recovered by the claimant for total permanent disability in accordance with his life expectancy, is unrealistic, to say the least.
For the reasons stated, the employer and carrier's petition for certiorari is granted and the order of the Full Commission is quashed, both as to the award of compensation and of an attorney's fee, with the directions as stated above.
The question presented by the claimant's cross-petition for certiorari, respecting the action of the Commission in reducing the amount of the fee awarded his attorney by the Deputy Commissioner, is resolved by our decision on the employer-carrier's petition. Accordingly, the question thereby presented having become moot, the claimant's cross-petition is dismissed.
THOMAS, C.J., TERRELL and DREW, JJ., and McCRARY, Circuit Judge, concur.