O’CONNELL, Justice.
The petitioners, the employer and the carrier, seek review of an order of the deputy commissioner affirmed by the Full Commission awarding the claimant, respondent here, permanent partial disability benefits based upon a finding by the deputy that the claimant had suffered a 25% dimunition in his wage earning capacity.
Petitioners contend that there is no competent substantial evidence to support the finding and order that the claimant suffered a 25% permanent loss of wage earning capacity, and also that both the deputy and the Full Commission misconstrued the provisions of Sec. 440.02(9), F.S.A.
While working for the employer, claimant on December 2, 1958 suffered a com-' pensable accident, being struck on the head by a descending elevator.
After medical treatment for the lacerations to his scalp, he returned the next day to his usual work as a journeyman plumber. He continued thereafter to work for the employer, but at lighter duties, until June 1959 when he voluntarily terminated his employment.
*274 The petitioners paid claimant temporary disability benefits through June S, 1959 and have at all times furnished medical care.
On August 12, 1959 claimant filed the instant claim in the alternative claiming additional temporary disability benefits or permanent partial disability benefits.
The final hearing in this cause was held on February 9, 1960.
The record shows that at the time of the accident, claimant, a white male about 51 years of age, was working as a journeyman plumber in heavy or industrial plumbing work. He acted as “lead man” which required that he read blueprints and lay out work for other men. He was required to work above ground level on scaffolding.
Claimant returned to his same work the day after the accident, but after several days was given lighter duties at ground level because of complaints of dizzy spells.
He continued working at lighter plumbing work with the same employer, receiving union scale wages, which were raised from $3.55 per hour to $3.60 per hour in April 1959. Claimant underwent medical treatment during this period.
In June 1959 claimant voluntarily quit his job with the petitioner and left the state. He returned to Florida at some indefinite date during the summer of 1959.
When he returned he sought employment with the petitioner but was refused, not because of his condition but because petitioner questioned claimant’s honesty.
Thereafter claimant worked for five different employers, doing light plumbing work. He had worked for the last one since November 1959 and was still employed by this firm at the time of the hearing. He did not attribute the termination of employment by the first four employers to his physical or mental condition which he contends resulted from the compensable injury.
Claimant’s complaints are that since the injury he has been subject to dizzy spells, headaches, nausea, inability to concentrate, inability to lift heavy objects, nervousness, insomnia and fatigue. He says that he is unable to work at heights, to lay out work from blueprints, or to perform heavy work, as he did before the accident. He says that he is only able to do light plumbing work. The evidence shows that of the plumbing work done in the Miami area, where claimant lives, approximately half is of heavy or industrial type and half of the light type. Claimant argues that because he is now limited to light plumbing work his job opportunities are considerably more limited than prior to the accident.
Claimant’s injury is a non-scheduled injury. Compensation benefits must be determined not on functional disability but on “disability” as defined in Sec. 440.02(9), F.S.A., i. e. on loss of wage earning capacity.
We are here required to determine whether there was before the deputy competent substantial evidence which accords with logic and reason to support a finding that claimant, because of the compensable injury, had suffered 25% dimunition in wage earning capacity in the same employment as he was engaged at the time of the injury, or in any other work that he can perform.
The factors to be considered in determining disability benefits in non-scheduled injuries have been discussed in Ball v. Mann, Fla. 1954, 75 So.2d 758, and in Southern Bell Telephone & Telegraph Co. v. Bell, Fla. 1959, 116 So.2d 617.
It is not disputed that claimant suffered a compensable injury and the record indicates that he has some functional disability. We have concluded, however, that the record does not contain competent substantial evidence, which accords with logic and reason, to support a finding of 25% dimunition of wage earning capacity.
On the question of loss of wage earning capacity the claimant offered his own testimony and that of a physician, Dr. von Storch, who examined but did not treat *275 him. The reports of several physicians were received in evidence. They are covered by the testimony of Dr. von Storch.
The testimony of two plumbers who worked with claimant before and after his accident was received. However, their testimony related only to claimant’s condition at a time prior to June 5, 1959 during which period claimant was admittedly temporarily partially disabled. The testimony of these witnesses is not relevant to the loss of the wage earning capacity of the claimant as it existed after June 5, 1959 or at the time of the hearing in February 1960.
In his testimony claimant discussed the effect of the injury only on his capacity to work in the plumbing trade. Further, his testimony related to loss of wages and not loss of capacity to earn wages and not only was the testimony speculative but it did not relate the loss of wages directly to the effects of the compensable injury.
For example when asked what percentage of time he “did not work compared to the available hours of work in the past year” i. e. from February 1959 to February 1960, he said:
“Well it would be just a guess. Maybe I lost maybe 30 or 35 percent of the time.”
When asked how “many hours of the work available in the past year” he did not work he replied:
“Well that is hard to say. I would say that maybe 600 or 700 or 800 hours.”
As pointed out in the case of Port Everglades Terminal Co. v. Canty, Fla. 1960, 120 So.2d 596, it is the intention of the workmen’s compensation law to compensate not for loss of wages but loss of wage earning capacity.
In connection with the loss of wages by claimant the record shows that the plumbing business was slow during the time involved and as testified by claimant the plumbing shops were spreading the work among all workmen, giving each man a share of the available work.
Further, as above stated, claimant was admittedly temporarily disabled until June 5, 1959, so any loss of earnings prior to that date could not be considered in proof of any permanent disability. Also claimant voluntarily removed himself from the labor market in June for some indefinite period of time.
The most definite evidence connecting loss of wages with the injury was that since working for his present employer, for whom he had worked since November 1959, claimant has lost 8 to 10 days because of nausea, which he attributed to the injury, and a cold which he caught along with the nausea. He did not seek medical treatment during this period of sickness.
He further stated that he could continue to do light plumbing work as he was then doing, but would have to stop work to rest from time to time.
While the foregoing statements summarizing claimant’s testimony on the issue here involved indicate that claimant may well have suffered some loss of wage earning capacity in the plumbing trade the evidence is not such as can be classified as competent and substantial, nor does it accord with logic and reason to support the finding of a 25% loss of wage earning capacity. Equally important is the fact that the claimant’s testimony gave no consideration to the effect of his injury on his ability to earn wages in any other work. The burden was on him to do so.
In his testimony Dr. von Storch, who examined the claimant for one hour in November 1959 and also studied and relied upon the reports of other physicians who have seen the claimant, stated that based upon his examination of the claimant and the reports of the other physicians he was of the opinion claimant had a post-traumatic syndrome with some evidence of organic, mental and emotional changes, all connected *276 with the compensable injury. He was of the opinion that the claimant would have some difficulty with thinking problems, he was neurotic, he had a history of three “seizures”, fainting spells or syncopes related to epilepsy, and that claimant’s efficiency as a workman would be impaired by these conditions. He testified that he found no loss of coordination in the claimant.
In response to a question as to the percentage of disability of the claimant the doctor replied:
“With regard to his usual occupation, I would say he would be limited in the neighborhood of SO per cent, and this largely because of his seizures but partially because of other changes in him as well.” (Emphasis ours.)
In response to a question as to percentage of disability without considering the type of work he was doing the doctor stated:
“I would say somewhere around 25 or SO percent. I just find myself unable to accurately state these things in general.”
In response to a question as to the disability of one afflicted by epileptic fits during the interim between such fits the doctor stated:
“There should be no disability for the actual time in which the patient is working and is not having a fit.”
The doctor testified that according to his information the claimant had three seizures. The first was around Christmas 1958, shortly after the accident; the last was in May 1959; and the second was in between those dates. He stated that epileptic fits in a person form a pattern occurring either less or more frequently with the passage of time and that in claimant’s case the frequency of the attacks had ceased. In his testimony claimant stated that his last fainting spell had occurred in July 1959, so the testimony of the doctor and claimant is at variance on this point.
Claimant for some time prior to the hearing had been taking medications designed to control or eliminate the dizzy or fainting spells. He stated that his attack in July occurred at a time when he had run out of the medicines. ■
In measuring the adequacy of the medical testimony to support the finding of the deputy it is significant to note that Doctor von Storch admittedly based his estimates of disability “largely on the seizures” from which claimant had suffered. When this fact is considered along with the doctor’s statement that one so afflicted is only disabled during the actual occurrence of such a seizure and with the evidence which shows that the last seizure occurred, according to the claimant, in July 1959, some seven months prior to the hearing, the estimate of disability given by the doctor appears to us to be without basis in the record. Certainly it does not accord with logic and reason.
It is impossible to determine from the record whether the cessation of claimant’s seizures is due to their control by the medications being administered or to improvement in his condition. This could only be determined by a reduction of the medications under observation of a physician over a period of time. However, it makes little difference whether their absence is due to control by medication or to improvement in his condition. The important fact is that claimant has not suffered a seizure in some seven months. Thus the principal factor upon which the doctor’s estimate of permanent disability is based is not reflected by the record.
Further, while it might be possible to infer, from the doctor’s testimony relating to percentage of disability, that he was speaking of impairment of wage earning capacity, the questions and answers are equally susceptible to the view that he was testifying as to functional disability. As pointed out in Ball v. Mann, Fla., 75 So.2d 758, supra, and in Southern Bell Telephone and Telegraph Co. v. Bell, Fla., 116 So.2d *277 617, supra, the functional disability is not necessarily determinative of impairment of wage earning capacity. In the further proceedings which may be had this matter may be clarified.
For the reasons above expressed we are of the opinion that there is not competent substantial evidence which accords with logic and reason to support the order of the deputy as affirmed by the Full Commission.
Accordingly the petition for writ of certiorari is granted, the order of the Full Commission is quashed, and the cause is remanded for further proceedings consistent herewith.
THOMAS, C. J., and TERRELL, HOB-SON and THORNAL, JJ., concur.