141 So.2d 576 (1962)
Wilson D. HOGAN, Petitioner,
v.
CENTRAL SAND COMPANY and The Florida Industrial Commission, Respondents.
No. 31502.
Supreme Court of Florida.
May 23, 1962.
*577 Wm. M. Wieland of Berson, Barnes & Inman, Orlando, for petitioner.
Monroe E. McDonald, of Sanders, McEwan, Schwarz & Mims, Orlando, Burnis T. Coleman and Patrick H. Mears, Tallahassee, for respondents.
MASON, Circuit Judge.
The petitioner as a former employee of the respondent Central Sand Company has petitioned for Writ of Certiorari to review an order of respondent Florida Industrial Commission which approved an order of a deputy commissioner. The order sought to be reversed determined that petitioner was less than permanently and totally disabled by accident which admittedly occurred during the course of and which arose out of his employment by respondent Central Sand Company. The Deputy found that petitioner was only eighty-five per cent disabled and ordered that he should be compensated accordingly. This order, and the Deputy's findings included therein, were approved by the full Commission by a two to one majority.
Petitioner seeks an order of this Court quashing the order of the Commission and directing it to enter its order, based upon the record before the Deputy Commissioner, to find that the petitioner was permanently and totally disabled as a result of the accident, and to award compensation accordingly. He would further have this Court direct the Commission to command the Deputy to reconsider the question of attorney's fees in the light of the determination of such permanent total disability of the petitioner and to enter an appropriate order thereon.
We are of the opinion that the petition should be granted. We believe that in the light of the record before the Deputy his order approved by the full Commission, which determines that petitioner was only eighty-five per cent disabled is unrealistic and does not comport with the facts as reflected in the record before him.
Petitioner was injured in June of 1958, while working for respondent, Central Sand *578 Company, when he fell from a catwalk some fourteen feet or more to the ground and railroad track below. In this accident he suffered fracture of the tibia and fibula of the right leg at the knee, and cerebral contusion. Gangrene ensued, necessitating amputation of the right leg below the knee. Two years later, June, 1960, after having fitted petitioner with a prosthesis, the attending and treating physician pronounced petitioner able to return to work, and discharged him as cured, with a residual permanent partial disability of ninety percent of the right lower extremity. The employer-carrier had paid all medical and compensation benefits as of the time of his discharge by the physician, based upon the rating of disability determined by such physician. A month later petitioner filed a claim for compensation, requesting additional medical treatment and compensation benefits.
At the hearing upon the claim, held before the Deputy Commissioner in December of 1960, it was stipulated that the employer-carrier had paid all temporary total compensation to which petitioner was entitled to the date of the hearing, and had commenced permanent partial disability payments on May 11, 1960, in accordance with the rating of the attending and treating physician; that such rating entitled petitioner to two hundred weeks of compensation for the loss of his leg, and that the sole issue before the Deputy Commissioner was limited to the question of whether the petitioner is entitled to payment in excess of two hundred weeks. In his claim the petitioner contended that he was entitled to benefits based upon a rating of permanent total disability.
The testimony before the Deputy Commissioner at the hearing reflects that the petitioner was forty-seven years of age, that he had always earned his living from manual labor, having been a farm, grove or packing house worker since he was a small boy. He had only a second grade education and stated that he could neither read nor write. This latter fact was substantiated by the Counsellor for the Vocational Rehabilitation Service.
The medical testimony at the hearing indicated that as a result of the fall petitioner had sustained a concussion resulting in a state of partial paralysis and aphasia. The medical testimony further indicated that by the time of the hearing he had a slight weakness of the lower face on the right side, slight slowness of speech, a little less grip in the right hand than in the left, and the power of the right upper extremity was not equal to that of his left. The petitioner is right handed, and there was some loss of pain sensation and a loss of dexterity in his right arm and hand. The examining neuro-surgeon testified that there was a disability or weakness in his right arm and facial muscles as a result of the concussion, which, in the opinion of said doctor resulted in a disability of twenty percent of the body as a whole. This witness stated further that it was his opinion that any manual labor that petitioner could perform would have to be of a "lighter nature and possibly a job of a sitting nature," because of the loss of his leg. The medical testimony was further to the effect that throughout the period from the time of the amputation of his leg until he was discharged as having reached maximum benefit from medical care in June of 1960, petitioner was intermittently having trouble from bleeding of the stump of his leg, as well as difficulty in wearing his artificial limb. When discharged by the physician the petitioner was ambulatory with a cane only, and stated to the doctor that he had done some plowing since the fitting of the prosthesis.
Some five months before his medical discharge petitioner had been referred by the treating physician to the Vocational Rehabilitation Service of the State Department of Education for counseling relative to the possibility of return to some form of *579 gainful employment, but after several months of intermittent conferences that Service announced that because of lack of education and due to the mental and physical limitations of the petitioner vocational rehabilitation was deemed impracticable. The Counsellor who testified at the hearing in response to a question as to whether a sedentary position or job was available to petitioner answered that it was not, and that such positions "are more or less premium positions that many employers use for their disabled."
Petitioner testified that he had performed manual labor all of his life until he was injured while working for respondent Sand Company. That when he was discharged by the treating physician he reported back to his employer for work, but was told that they had no job for him. That since then he has driven a tractor "a little bit" on a sixteen acre grove belonging to his wife's brother. That his wife had to help him turn the tractor around at the end of the rows; that he had difficulty braking the tractor with his artificial leg, the tractor having a clutch pedal which required the use of the other leg. He said it hurt his leg to press the brake with his artificial limb. He further testified that the leg hurt him when he walked and that the stump "is red and stays red." Further, he said that when he tried to disc in the field with the tractor the rough ground caused his leg to hurt. The only compensation received by him and his family for the work of himself, his wife and daughter in the grove was free house rent from his brother-in-law. All of the heavy work was done in the grove, he said, by his wife and daughter. He claimed not to be able to hoe, because he had no strength in his right hand, stating that when he attempted to do so he felt pain in his fingers and in his neck. He also testified that he could not sit for long without the leg hurting. He said he could not sleep at night after a day of riding the tractor, because of pain in the stump and the leg. He claimed that he could not control the flow of saliva in his mouth, but would "slobber one side of my mouth." He was using a cane to assist in walking. He stated that it was necessary that his wife, or someone, assist him in putting on his artificial leg. He admitted that he could drive an automobile with automatic transmission, but that it hurt when he attempted to apply the brakes.
Petitioner's wife testified and substantiated the testimony of her husband as to his claimed disabilities.
Based upon the testimony before him and the medical reports received in evidence and his personal observation and examination of the petitioner, the Deputy found that petitioner's ambulation and general body use was such that he could do some work. The Deputy concluded that petitioner had a residual disability, including both functional and economic loss resulting from his injuries, of eighty-five percent of the body as a whole. He found that the petitioner was "less than permanently and totally disabled," and that therefore it was "not the responsibility of the carrier to show what he can do under these circumstances."
The Deputy discounted the testimony of petitioner's wife as being influenced by emotional stress and strain. He evaluated the testimony of the Vocational Rehabilitation Counsellor as having only the effect of affirming that petitioner "would not benefit from the services offered by the Department of Rehabilitation." The Deputy's findings and decision were approved by the full Commission by a two to one majority.
The Deputy's findings of fact do not comport with the record before him. If a deputy's findings are supported by competent, substantial evidence, no reviewing authority should overturn them. However, after very careful review and study of all of the evidence before the Deputy herein, we are of the opinion that his conclusion that this petitioner is only eighty-five *580 percent disabled from earning a living is not sustained by such competent evidence. It is our view that the evidence is all to the effect that this petitioner is totally disabled to earn a living for himself and family.
The Deputy has concluded that this petitioner has a fifteen percent earning capacity, yet the evidence shows overwhelmingly that he is not capable of steadily performing any type of work. The distinction between permanent partial disability (which the Deputy says the petitioner has) and permanent total disability, has been stated by the Pennsylvania Superior Court in Earley v. Philadelphia & Reading Coal & Iron Company, 144 Pa. Super. 301, 19 A.2d 615, 617, and approved by this Court in Port Everglades Terminal Company v. Canty, Fla., 120 So.2d 596, and in Matera v. Gautier, Fla., 133 So.2d 732, as follows:
"The first includes persons who have sustained accidental injuries, but are capable of steadily performing certain types of light work. It is presumed that such work is available, and that one can procure it. In those circumstances a claimant is entitled to compensation for partial disability. The second class embraces those who are not able uninterruptedly to do even light work owing to their physical limitations due to accidental injuries. If suitable work is available for such a person, it is incumbent upon the defendant to show that fact, otherwise a claimant is entitled to total disability."
It is our view that the overwhelming weight of the evidence herein discloses that petitioner falls within the second of the above classes, and that it was incumbent upon respondent employer to show that suitable work is available to him. (See Matera v. Gautier, supra, 133 So.2d p. 734). The record is void of evidence showing that suitable work was available to the petitioner. True, he worked spasmodically for small remuneration for a brother-in-law, but the record is devoid of any inference that there existed a reasonably stable market for his services. The Deputy did not find that there was work that petitioner can steadily do, but stated only that he "thinks" there is some work he can do. He did not find that there was any demand for any type of work of which he thought petitioner was capable of performing.
This Court has quoted with approval the principle set forth in the Minnesota case of Lee v. Minneapolis St. Ry. Co., 230 Minn. 315, 41 N.W.2d 433, 436, 437, as follows:
"An employee who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, may well be classified as totally disabled." Port Everglades Terminal Company v. Canty, Fla., 120 So.2d 596, page 600.
Here, the only market for petitioner's services was work for his brother-in-law for a mere pittance, and even that he did while racked with pain. It has been held by this Court in Canty, supra, that "Where the injured person can handle only a specially-created job, one light of effort and responsibility but laden with rest and comfort (employment plums that do not often dangle from the tree of every day economics) the burden is on the defendant-employer to show that such a job is in fact within reach." And, "if proof of that fact is not presented, the claimant then is entitled to a finding of total disability."
Here we have an illiterate laborer who before the accident was capable of earning his living only by the use of his physical body  through manual labor. And the manual labor for which he was capable required the use of his arms and legs, such as for plowing and hoeing and lifting heavy objects. He had no special skill or training *581 which enabled him to work in any craft or trade. Only by the use of brawn and strain could he earn his daily bread, and that of his family. Now he has for all practical purposes been deprived of these physical capacities. The Deputy himself has, in effect, said that he is only fifteen percent of a man. It is inconceivable that an illiterate laborer who has been deprived of all his physical capacity  and physical capacity was all he ever had  except for fifteen percent, can be said to have ability to earn any substantial portion of his livelihood from steady employment. A stable market for the services of a man of such limited capacity is most unlikely. At least it has not been shown to exist for this petitioner. All Courts agree that a workman need not be absolutely helpless or physically broken and wrecked for all purposes except merely to live, in order to be found totally and permanently disabled, within the meaning of our workmen's compensation laws.
We hold that the record herein justifies only the findings that petitioner is permanently totally disabled within the meaning of the Florida Workmen's Compensation Law, and that he should be compensated accordingly.
The questioned order of the full commission is quashed and vacated with directions to remand the cause to the deputy commissioner with instructions to enter a compensation order in accordance with the views herein expressed and to reconsider the question of attorney's fees in the light of the determination of such permanent total disability of the petitioner.
It is so ordered.
DREW and THORNAL, JJ., and McCORD, Circuit Judge, concur.
THOMAS, Acting C.J., dissents.