197 So.2d 502 (1967)
HARDWARE MUTUAL CASUALTY COMPANY, and S.A.M. Corporation D/B/a Place Pigalle, Petitioners,
v.
Sharon SUTTON and the Florida Industrial Commission, Respondents.
No. 35711.
Supreme Court of Florida.
April 5, 1967.
*503 Spencer & Taylor, Miami, for petitioners.
John V. Christie, Allen Clements, Miami, Patrick H. Mears, Tallahassee, and J. Franklin Garner, Lakeland, for respondents.
THOMAS, Justice.
The respondent, Sharon Sutton, was severely injured on the night of 12 September 1962 in what petitioners call a "shooting incident". It seems to us that the action deserves a much harsher definition. Actually she was engaged in her employment as an acrobatic dancer when a disgruntled, and, evidently, drunken, patron shot up the place killing a male entertainer, wounding the doorman with bullets in both legs and so injuring the claimant by shooting her through and through that it was necessary to amputate one of her legs. So when the fracas ended the claimant was a onelegged exotic dancer  38 years of age with no other training. For all practical purposes she was totally permanently disabled, deprived of her means of livelihood, sick and depressed. We have held that a person need not be wholly incapacitated to obtain that status and we think claimant is a classic example of how incapacitated a person may be without actually vegetating. Hogan v. Central Sand Co. et al., 141 So.2d 576, (Fla. 1962).
But the precise status of the claimant was not immediately determinable. It was long debated, by those familiar with the occurrence but not in position to resolve the issue, whether she was an employee or an independent contractor and the question was not finally settled until October 1964 when this court entered its order favoring the claimant. Meanwhile, because of controversion of the claim on the grounds *504 that claimant was not an employee and that the carrier had not provided coverage for her, the matter remained in abeyance. Many hearings were held, hundreds of pages of testimony were received and transcribed and the claimant was treated in many hospitals by numerous physicians.
After detailing the facts of the case and the relationship of the operator of Place Pigalle and the claimant, the deputy opined that it was "a clear case of `employment'".
But many months passed before an adjudication of the relationship which, as we have said, seems to have been fully discussed among persons familiar with the case, a situation which we relate because it reflects the difficulty of doctors and hospitals in adhering to the law requiring their bills to be presented within 10 days of the first treatment. Because of the confused legal situation, the deputy excused the failure strictly to follow the statute and he acted properly in doing so. Of course, while the doubt existed, the claimant was in dire need of treatment and it was furnished her during the many intervening months. We think the case was typical of those where an excuse for failure to comply may be applied by the commission for "good cause" under Sec. 440.13(1), Florida Statutes, F.S.A. The factual circumstances present here constituted, in our opinion, good cause for non-compliance with the statute.
The next challenge of the petitioners is directed to the award of attorneys' fees in the sum of $15,000 which they insist is based on "erroneous criteria of benefits." A study of the record does not disclose a basis for this assault. The matter appeared in this court twice and the combined records of the two visits amounted to about 640 pages. The time elapsed between the date of the unfortunate occurrence and the present consideration by the court approximated four years and six months. Moreover, five attorneys, all known to us as skilled in the field of workmen's compensation testified on the subject of the attorney fee. True, there was disparity between the lowest figure, $6500, and the highest, $25,500, but the amount fixed by the deputy was well within the range of testimony on the subject and there was abundant competent substantial evidence to support the fee the deputy eventually fixed.
In this connection the petitioners complain that the deputy based the fee on an erroneous amount of benefits inasmuch as he made a mistake of $1000 in his addition of the various benefits and since the sum of $285 interest was improperly included in the total. Although these two items are plainly erroneous, we do not find that the deputy actually used them in computing the fee.
Petitioners assail that part of the deputy's order that the claimant be furnished "with further medical treatment as the nature of her injuries may require" which was based on his finding that her "resultant permanent mental and emotional condition will require continuous psychiatric treatment during the life of the claimant." Even assuming that the eventual finding may be interpreted as an express order for psychiatric treatment it was testified by one physician that the claimant was a potential suicide and would need some psychiatric "supervision" to forestall the need for psychiatric "care". This testimony supports the conclusion of the deputy on this point.
The petitioners assert flatly that the deputy rejected the testimony of one doctor without giving any reason therefor as, indeed, he did which is apparently a ruling conflicting with what this court said in Reed v. Whitmore Electric Co., 141 So.2d 569 (Fla. 1962). But any harm from the disregard of the part of the decision lifted from context is more apparent than real because it was directly contrary to the testimony of other doctors which he believed, and it would have added nothing at all worthwhile to have explained that he rejected the testimony because it did not comport with the testimony he believed *505 about the simple question whether or not the claimant had a psychiatric condition prior to the shooting. The two the deputy believed said that she had not; the one whose testimony the deputy rejected said she had. So in believing the two he ipso facto rejected the one.
The next challenge of petitioners is a criticism of the deputy's failure to apportion the claimant's psychiatric disability. This we decide in respondent's favor for we think there is insufficient evidence to establish a pre-existing psychiatric condition.
Petitioners argue that the deputy erred when he held that the claimant had reached maximum medical improvement. There was evidence to support that position from three physicians who testified positively that the claimant had reached maximum medical improvement. After studying the records of the two phases of the case brought here, it is not difficult for us to understand why the deputy chose to believe them. Her situation seems hopeless. Not only has she failed to adjust herself four years after she was hurt but also, as one doctor said, she is plagued by severe phantom pains and is definitely emotionally unstable.
Petitioners' last question is somewhat vague. It follows: "Is not the employer-carrier entitled at some point, to have a finding made on what bills it is supposed to pay?" The answer is found in paragraph 2 of the deputy's order that the employer by its carrier:
"Pay any and all outstanding unpaid medical bills incurred in the treatment of claimant's injuries and condition caused by her injuries on or before October 12, 1964 and reimburse the claimant for any expenditures she has made in this respect, all in accordance with the medical fee schedule of the Florida Industrial Commission."
In this connection it is noteworthy that in the final order of the Commission the right was reserved to the parties to submit any disputed items, relating to medical services, for settlement and disposition.
The order of the deputy as affirmed by the Full Commission is affirmed.
THORNAL, C.J., and ROBERTS, CALDWELL and ERVIN, JJ., concur.