PER CURIAM.
Claimant appeals two Workers’ Compensation orders, the first awarding benefits for a 40% permanent partial disability of the body as a whole and the second supplemental order denying reclassification of benefits voluntarily paid during the period from March 31,1977, to November 30,1977. The issues are whether the deputy’s characterization of claimant’s disability requires a finding that she is permanently totally disabled and whether the benefits paid during the period from March 31, 1977, to November 30, 1977, should have been reclassified as temporary disability payments which could not be credited against permanent disability benefits. We have determined that the appeal is meritorious.
While employed as a garment worker at Okaloosa Mills, claimant, who is forty-five years old, suffered two work-related accidents: the first on August 9, 1976, when her foot slipped and she fell to the floor injuring her back; the second on September 14, 1976, when her chair slipped back and overturned and she again injured her back. Before these accidents, in April, 1976, an orthopedic surgeon, Dr. Kerr, determined claimant suffered from a herniated disc at the L5-S1 level and recommended surgery, but she was reluctant to have the operation. Between the April diagnosis and the accidents later in the year, claimant improved with conservative treatment.
After the second accident, claimant ceased working at Okaloosa Mills. Temporary total disability benefits were paid from September 15, 1976, through March 31, 1977. From March 31, 1977, until November 30, 1977, claimant received payments which were characterized as permanent partial disability benefits in the order of December 12, 1979. For thirty-five weeks, from November 30, 1977, to May 3, 1978, claimant received rehabilitative compensation and from May 4,1978, to December 26, 1978, she received temporary total disability benefits.
Claimant attended classes at Okaloosa-Walton Junior College from January, 1977, until June, 1978, receiving a clerical certificate, but not completing her bookkeeping course. Her school attendance overlapped the thirty-five weeks from March 31, 1977, to November 30, 1977.
The first date of maximum medical improvement was December 12, 1977, but claimant’s pain continued and she had the back surgery in June, 1978, reaching maximum medical improvement from the surgery on December 27, 1978. Subsequently, claimant attempted to locate suitable work, although Dr. Kerr had restricted her to light work at which she would sit and stand at will. She performed some part-time work as a local agent for a film distributor.
In the order of November 29, 1979, the deputy commissioner found that claimant was able to do light housework, but would occasionally be bedridden. The deputy further found claimant capable of light work at minimum wage, but “her periodic episodes of disabling pain may prevent her from keeping jobs for significant periods of time. Therefore, she will occasionally be unemployed.” Claimant was found to have incurred a 40% permanent partial disability of the body as a whole on her physical impairment, education, and vocational skills.
On appeal claimant correctly contends the deputy’s findings that she may be prevented from keeping jobs for significant periods of time, and will therefore at such times be unemployed, compel the conclusion that she is permanently totally disabled. The findings demonstrate that claimant has shown her inability to uninterruptedly perform even light work. Port Everglades Terminal Co. v. Canty, 120 So.2d 596 (Fla. 1960) (now codified in Section 440.15(l)(b), Florida Statutes, 1979). Following such a *852 showing, the employer/carrier must show that suitable work is available. The employer/carrier presented the testimony of one potential employer who had interviewed claimant for a temporary position. This employer stated he would have hired claimant for the position had there not been a more qualified applicant. This testimony, which was not referred to in the deputy commissioner’s order, does not show that suitable employment was available to claimant. The witness’ testimony did not detract from the evidence that claimant could not keep a job for a significant period of time.
As to the second point, payments of compensation made before the date of maximum medical improvement are not properly classified as permanent disability payments. Since the first date of MMI was December 12, 1977, the payments made after March 31, 1977, and before November 30, 1977, should have been reclassified as temporary disability benefits.
The deputy commissioner, in the order of December 12, 1979, found that during the period from March 31 to November 30, 1977, claimant was not temporarily totally disabled, having failed to test her employa-bility in the marketplace during the period of attendance at rehabilitative educational classes. A claim for temporary total disability includes a claim for temporary partial disability, however, and voluntary payments must be reclassified as payments for temporary disability.
Claimant points out that if these voluntary payments had been properly classified as temporary disability payments, they could not have been credited against permanent disability payments ultimately found to be due. Voluntary advance payment of compensation is gratuitous except with regard “to payments in the amount of and within the time for disability compensation of that class ultimately found to be due.” Schel v. City of Miami, 193 So.2d 170 (Fla. 1966); Diplomat Hotel v. Badini, IRC Order 2-3494 (August 2, 1978); Tampa Wholesale Co. v. Gores, IRC Order 2-3720 (February 26, 1979). The payments made between March 31, 1977, and November 30, 1977, were improperly classified as permanent disability benefits and cannot be credited against other permanent disability benefits.[1]
In summary, as to point one, the deputy commissioner’s findings compel the conclusion that claimant is permanently totally disabled, therefore the portion of the November 29, 1979, order finding her permanently partially disabled is reversed. As to point two, we reverse and remand for reclassification of benefits and recomputation in light of Schel of the credit allowed the employer/carrier in the order of December 12, 1979.
WENTWORTH and JOANOS, JJ„ and WOODIE A. LILES (Ret.), Associate Judge, concur.

. The deputy commissioner correctly noted that the thirty-five weeks rehabilitation compensation paid from November 30, 1977, to May 3, 1978, could not be offset against either temporary total or permanent partial disability benefits.